HENRY B. OWENS, et als., v. W. H. PHELPS, et als.

*Appeal—Motion to Dismiss—Case on Appeal—Evidence—The .Code, Section 590.*

1. The absence of the judge from the district does not dispense with the requirement that he should settle the case on appeal upon disagreement of counsel.

2. When counsel disagree as to the statement of the case on appeal, and instead of submitting the two variant statements to the judge, they are both sent to the Supreme Court, that court will not dismiss the appeal, but will presume that the appellant agrees to the amendments contained in the case of the appellee, which will be taken as the case on appeal.

3. An administrator has no power to rescind a contract to purchase land, made by his intestate.

4. Where in an action brought to declare such attempted rescission a nullity, it appeared that the vendor had paid to the administrator a sum of money for which the rescission was the consideration; *Held*, that the administrator had such an interest as made him incompetent to testify.

(*Redman* v. *Redman*, 70 N. C., 257; *Weinstein* v. *Patrick*, 75 N. C., 344; *Mason* v. *McCormick*, *Ibid*, 263 ; same case, 80 N. C., 244, cited and approved).

CIVIL ACTION tried before *Graves, Judge,* and a jury, at Spring Term, 1883, of DAVIE Superior Court.

The facts appear in the opinion.

There was a verdict and judgment for the defendants, and the plaintiffs appealed.

*Messrs. Batchelor & Devereux,* for the plaintiffs.

*Messrs. Coke & Williamson* and *Clement & Gaither,* for the defendants.

SMITH, C. J.   When the writ of *certiorari* was awarded, as a substitute for a lost appeal, at the last term, the plaintiffs were allowed to prepare and serve their case on appeal, until the 25th day of January, 1885, and the settlement of any disagreement between the parties was to be made in accordance with the provisions of *The Code,* §550.   This was done, and a copy duly served upon one of the counsel for the appellees.   To this, excep-

tions were taken, embodied in the form of a substitute, and a copy delivered to the appellants' counsel and by him sent to the Clerk, who transmitted, by his direction, both copies, with the record, to this court, in obedience to the mandate of the court. Upon the calling of the case, defendants'. counsel moved to dismiss the appeal, because the Judge who tried the case had not been notified of the disagreement, and called on to adjust the matters in dispute in the manner prescribed in the section referred to. The absence of the Judge from the district, though producing inconvenience alike to the parties and to himself, does not dispense with that statutory requirement, inasmuch as provision is made for such contingency by an amendment introduced into the section, as it now appears in *The Code.* The act of the appellant, in directing the Clerk to send to this court the two discrepant statements, must be considered as accepting that of the appellees whenever they differ, and thus it was needless to submit them for adjustment.

It is only when the appellant is dissatisfied with the proposed amendments, and requires the Judge to pass upon the exceptions, that it becomes necessary for him to interpose and settle the matters in variance.

The result of what was done, is to bring before us the case prepared by defendants' counsel as containing the exceptions to the rulings of the court, to be considered and disposed of, and the motion to dismiss, for the reason assigned, must be denied. The case then is this:

In September, 1857, a contract for the purchase of the land mentioned in the complaint was, entered into between William A. Owens and the defendant Uriah H. Phelps, wherein the former agreed to pay therefor the sum of one thousand eight hundred dollars and to secure the same, executed his three several notes of six hundred dollars each, payable at one, two and three years. At the same time the vendor executed his .bond to the vendee, and therein covenanted to convey the title when. the said notes were paid.

In December, 1859, W. A. Owens died intestate, and letters of administration on his estate issued to A. J. Owens, who, in the progress of the cause, at the instance of the defendants F. M. Phillips and J. H. Sparks, was brought in and made co-defendant with them.

The defendant J. H. Sparks died after the institution of the suit and before the trial. The testimony of A. J. Owens, a witness examined for the plaintiffs, in substance, is as follows:

The witness found among the effects of the intestate which came into his possession, the aforesaid title bond and two of the notes given for the purchase money of the land, while the third was in the hands of the vendor, Phelps. The witness made a demand for the conveyance of the estate, when he was informed by Phelps, that he could not make title, as he did not have it himself.

Under the advice of counsel whom he consulted, witness undertook to rescind the agreement, and took from Phelps two notes, one in the sum of $1,400; the other in the sum of $600 as representing the purchase money unpaid and due. The large note he delivered to his sister Priscilla Owens, who was the guardian of the infant children and heirs-at-law of the intestate, who with the husbands of two of them bring the present action. The smaller note, witness retained, having collected an inconsiderable part, and concedes his personal liability for the whole amount.

In January, 1868, Phelps who was then in possession conveyed one-half of the land to the said J. H. Sparks for the consideration of $1,300, its full value, and the two thereafter held a joint possession until August of the same year, when the former mortgaged his retained moiety to the defendant F. M. Phillips to secure a loan of $850.

There was evidence, tending to bring to the notice of the defendants, who purchased from Phelps, the previous contract of sale to the intestate, and other evidence tending to show the contrary.

The purpose of the present suit is to have declared a nullity the attempted rescission of the contract made with the intestate,

and to set up the bond for title as constituting an equity attaching to and following the transfer of the land to the defendants Sparks and Phillips, as purchasers with notice, who take in subordination to the prior equity.

During the examination of the witness A. J. Owens, the plaintiffs proposed to call out a conversation between him and Sparks, from which it would appear that the latter had information that the purchase money due under the original contract with the intestate had never been paid. The evidence, on objection from the defendants, was held to be incompetent under section 590 of *The Code,* on the ground that the witness had an interest in the result of the suit, and it was excluded.

The exception to this ruling alone, we deem necessary to consider, and it must be sustained.

The effect of the contract entered into between the defendant Phelps and the intestate Owens, was to vest an equitable estate in the land which, at his death, descended to his heirs-at-law, charged with the residue of the purchase money, to be paid out of the personal estate, if there was such applicable to the debt, by the administrator. He had no right further to interfere with the contract, or interrupt the descent of the acquired equitable estate to the infant heirs. His attempted rescission was unauthorized and a nullity against them, at their election on coming of age; and this right of theirs is in no manner impaired by his accepting the vendor's notes in place of and as a return of the money received under the contract, and the delivery of the larger one to their guardian.

The material inquiry then, was whether the subsequent vendees, the defendants, at or before the consummation of their several contracts, had information of the antecedent sale to the intestate and the paramount equity of his heirs, or such notice as would put a prudent man on inquiry which, if pressed, would have developed that information. The absence of any knowledge or information of the previous unperformed agreement, is the defence set up to the action, and the excluded evidence has a material

bearing upon this issue, and its rejection would be error, if the witness was not rendered incompetent to testify under the provision of The Code referred to.

The defendants contend that the witness has an interest in common with the plaintiffs in the controversy and that his proper place is with them. If this concurrent interest existed, and was adversary to that of the defendants, the conclusion would follow that he could not testify in aid of the plaintiffs, any more than he would be allowed to do upon an actual change of his relations towards the parties to the action. This ruling has been made in several reported adjudications. *Redman* v. *Redman*, 70 N. C., 257; *Weinstein* v. *Patrick*, 75 N. C., 344; *Mason* v. *McCormick*, 75 N. C., 263; and the same case reported in 80 N. C., 244.

Is this interest identical?

If the plaintiffs fail in their action, the result, so far as it effects the witness, will be to leave undisturbed what the witness has done, and exonerate him from the consequences of his unauthorized and illegal interference with the contract. If they prevail in the action, he may be called on to restore to the defendant Phelps the money wrongfully paid by him upon the attempted rescission, and he be required to pay back the purchase money received upon the subsequent sales to the other defendants. If the defendant Sparks had notice of the prior sale which the rejected evidence tends to prove he did have, the plaintiffs' equity attaching to the land, will pass with the transfer and charge the estate conveyed. The interest of the witness lies in the direction of defeating the plaintiffs' claim, while his testimony tends to sustain it. He is indeed not a necessary party to the action, since the plaintiffs are not obstructed in the pursuit of their remedy by the intermediate dealings between the administrator and Phelps, which, as to them, are still as if they had not taken place. He is made a co-defendant only that the purchasers, if held responsible and charged, may have redress on him in the same action. His interests are, therefore, not hostile but concurrent with theirs in defeating the action.

Standing in this relation to the cause and to the parties, the plaintiffs were entitled to have from his lips, in aid of their equity, the declarations made by Sparks, at least as against him.

There was error in the ruling, and must be a new trial. To this end let it be certified to the Superior Court, where it may be awarded and the cause heard before another jury.

Error.                                    Reversed