IN THE MATTER OF THE WILL OF GLENN EDISON SIMMONS, Deceased

No. 7825SC1044

(Filed 2 October 1979)

1. Wills § 22.1; Evidence § 11.6— caveat proceeding—testimony by preparer of will—mental capacity

Testimony by the attorney who prepared the paper writing in question in a caveat proceeding regarding transactions and communications with the deceased was properly admitted for the reasons that (1) he was not an "interested witness" within the meaning of G.S. 8-51 and (2) his testimony was not hearsay because it was offered to show the basis of his opinion that testator had the mental capacity to execute a will.

2. Wills § 19— question raised by caveator—further explanation by witness proper

In a caveat proceeding where caveators first raised a question concerning a "no visitors" sign on deceased's hospital door and where a witness was allowed, without objection, to testify on cross-examination that the sign was put there at the deceased's request, the trial court did not err in permitting the witness to explain how she reached this opinion.

3. Wills § 19; Evidence § 11.3— caveat proceeding—testimony about deceased's conduct—independent knowledge of witness

The trial court in a caveat proceeding did not err in allowing a woman who lived with deceased and had his children but who was not his wife to testify that deceased gave "accurate" responses to questions at the social security office regarding the preparation of an affidavit legitimating the witness's children, since the witness stated that the responses were accurate according to her personal knowledge, and G.S. 8-51 does not prevent a witness from testifying as to the acts and conduct of deceased where the witness is merely an observer and is testifying to facts based upon independent knowledge.

4. Wills § 23— caveat proceeding—failure to give limiting instruction—no request

No prejudicial error was committed by the trial court in a caveat proceeding in failing to give a limiting instruction with respect to testimony of witnesses who testified that, in their opinion, deceased had testamentary capacity, since no request for such instruction was made.

5. Wills § 23— caveat proceeding—evidence of transactions and communications with deceased—limiting instruction proper

The trial court in a caveat proceeding did not err in giving a limiting instruction which provided that testimony by the heirs of deceased concerning personal transactions and communications with deceased should be considered only for the purpose of showing the basis of their opinions with respect to deceased's mental capacity, and such instruction did not allow the jury to give unlimited consideration to the testimony of the attorney who prepared the will

or to that of the designated executrix under the will, nor could the jury take the instruction to mean that the rule did not apply to the witness who lived with deceased and bore his children, but was not married to him.

6. **Wills § 23— mental condition of testator—no evidence of undue influence—limiting instruction proper**

The trial court's instructions limiting certain testimony of caveator's witnesses regarding conversations with the deceased to the issue of mental capacity were proper, since such testimony concerned deceased's mental condition only; there was no independent evidence of undue influence; and the court's use of the expression "mental capacity" properly precluded the jury from considering the testimony on the issue of undue influence.

7. **Wills § 13— caveat proceeding—propounders entitled to open and close jury argument**

The trial court in a caveat proceeding did not err in allowing propounders to open and close the arguments to the jury.

APPEAL by caveators from *Gaines, Judge.* Judgment entered 29 June 1978 in Superior Court, CATAWBA County. Heard in the Court of Appeals on 23 August 1979.

This is a caveat proceeding instituted on 14 March 1978 by the six legitimate sons and daughters of the deceased who claim that the "paper writing" presented for probate as the last will and testament of their father one week following his death was not his last will and testament for the reasons that he lacked testamentary capacity at the time he executed such "paper writing" and that its execution was procured through the exercise of undue influence. Propounders, who are the woman with whom the deceased was living at the time of his death, the four illegitimate children he had by her, and the executrix of the purported will, duly answered the caveat, denying the material allegations therein. At trial evidence tending to show the following was offered:

Glenn Edison Simmons died on 16 November 1977 survived by his wife Hattie, from whom he had been legally separated since 1967; six sons and daughters ranging in age from twenty to forty-two who were born to the deceased and his wife during their marriage; and four sons and daughters ranging in age from seven to seventeen who were born out of wedlock to deceased and Ruth Townsend, a woman whom he had dated since 1957 and lived with since 1970. By a writing dated 16 August 1977, pur-

porting to be a written attested will, he sought to leave all his property to Townsend and their four children.

Propounders offered the testimony of Larry Pitts, the attorney who drew the will in question, and of Pitts' secretary who typed it. Both testified that the paper writing presented for probate was the document prepared by them for the deceased on 16 August 1977; that deceased had duly executed such document in their presence; and that they had thereafter signed the document as attesting witnesses.

Pitts testified further that he had known the deceased for "something over thirty (30) years"; that he had represented the deceased on "various and sundry matters" since 1968; that in August 1977 he had discussed and prepared divorce papers for the deceased and had subsequently filed a divorce action against Hattie Simmons; that on 16 August 1977 he prepared, at deceased's request, the script at issue here and a social security affidavit legitimating the four children of Townsend. Pitts said he knew that deceased had cancer and was undergoing radiation therapy, but that he had not detected any changes in deceased's mental or physical condition. Based upon his dealings with and observations of the deceased, Pitts stated that, in his opinion, deceased possessed the requisite testamentary capacity. Pitts was also allowed to relate that deceased had said

> several times that he was not going to leave anything to the children of [Hattie] . . . because they were grown and on their own and these four children that he had named by Ruth Townsend were young and he did not feel like she could or would be able to support them. . . .

Caveators called ten witnesses, four of whom were the deceased's legitimate sons, who testified in substance that their father lacked testamentary capacity because of his deteriorating physical condition. To support their opinions, they related that their father's memory began failing after a biopsy and subsequent surgery in the Summer of 1977; that he had difficulty remembering who they were on several occasions; that he sometimes forgot their names; and that Ruth Townsend and her children were almost always present when they visited their father at the hospital or at his home.

In re Simmons

Upon objection by propounders, the court limited certain testimony offered by caveators by instructing the jury that such testimony was to be considered "only for the purpose of offering evidence concerning his mental capacity." Under such an instruction, Max Simmons testified that his father's physical condition was so weak in August 1977 that he had trouble eating and drinking; that he could not see to drive at night; and that his mind was failing. He recalled that there was friction between some members of the Simmons' family and the Townsends, but that Ruth Townsend's reaction to him during his father's hospitalization had been "overly friendly, happy to see us all and everything. Just as nice as she could be." On cross-examination, propounders established that Max Simmons did not send his father birthday or Christmas presents; that he had not gone to visit his father after seeing him in the hospital in June 1977 and learning that he would die from the cancer within three to six months; that "[s]ometimes my father would be perfectly normal and then other times he would be a different person. . . . Sometimes he could recollect things that he wanted to do and other times he could not"; and that this witness had not seen his father on 16 August 1977 so as to know deceased's mental condition on that date.

The three remaining sons of the deceased testified to similar effect. None of them believed that their father possessed testamentary capacity, but none of them had talked with him on 16 August 1977, and all of them stated that at times he was perfectly normal.

Caveators also called William E. Butner, a local attorney, who testified that he had prepared a will for the deceased on 8 March 1969; that "Mr. Simmons was a person of strong will. He knew what he wanted to do, but he sought advice concerning business matters from more than one person. After he asked for advice and made up his mind, that was his decision"; that he had seen the deceased in the Summer of 1977; and that, although he noticed a change in deceased's physical condition, "[h]e did not say anything to me that indicated a change in his mental condition. . . ."

Caveators called adversely Ruth Townsend and Margie Hedrick, the executrix under the "paper writing" dated 16

August 1977. Townsend testified as to her relationship with the deceased; that their first child was born in 1960 and the last in 1970; and that they had all lived together since 1970 "when he purchased the trailer which we lived in." She related that arguments sometimes erupted between the Simmons and the Townsends, but that the Simmons' children had occasionally visited their father at the trailer and that she had never tried to keep them from seeing him. In her opinion, although the deceased was weak after his surgery, "[h]e did not get confused about things, nor did he ever confuse his children."

Hedrick testified in substance that she had been the deceased's bookkeeper since about 1962; that she had handled a lot of his business matters; that she had driven him to his attorney's office on the day the purported will was drawn; and that, in her opinion, the deceased had testamentary capacity.

Before the case was submitted to the jury, the parties stipulated that the script offered for probate was signed and executed according to law. The following issues were submitted to and answered by the jury as indicated:

1. Was the paper writing dated August 16, 1977 offered for probate as the Last Will and Testament of Glenn Edison Simmons signed and executed according to law?

ANSWER: YES

2. At the time of the signing and execution of said paper writing dated August 16, 1977, did the said Glenn Edison Simmons, lack sufficient mental capacity to make and execute the Last Will and Testament?

ANSWER: NO

3. Was the execution of the said paper writing dated August 16, 1977 procured by undue influence of Margie S. Hedrick, Ruth L. Townsend or others?

ANSWER: NO

4. Is the paper writing dated August 16, 1977 and each and every part thereof, the Last Will and Testament of Glenn Edison Simmons?

ANSWER: YES

From judgment entered on the verdict, caveators appealed.

*Gaither and Gorham, by James M. Gaither, Jr., and J. Samuel Gorham, III, for caveators appellants.*

*Corne and Pitts, by Larry W. Pitts and Stanley J. Corne, for propounders appellees.*

HEDRICK, Judge.

By various assignments of error, based on numerous exceptions noted in the record, caveators attack the admission of certain testimony of the witnesses Pitts, Townsend and Hedrick. Caveators argue that their testimony was hearsay and in violation of the "Dead Man's" statute, G.S. § 8-51. They contend that the hearsay rule operates to exclude certain of this testimony because such testimony was offered solely to prove the truth of declarations made by decedent before and after execution of the purported will. Furthermore, caveators assert that the provisions of G.S. § 8-51 prohibiting an interested party from testifying in his own behalf and against the estate "concerning a personal transaction or communication between the witness and the deceased person" compel the exclusion of the challenged testimony.

[1] With respect to the testimony of Pitts, the attorney who prepared the "paper writing" in question, we are of the opinion that his testimony regarding transactions and communications with the deceased was properly admitted for the reasons that (1) he is not an "interested witness" within the meaning of G.S. § 8-51; *Hall v. Holloman,* 136 N.C. 34, 48 S.E. 515 (1904); *Propst v. Fisher,* 104 N.C. 214, 10 S.E. 295 (1889); and (2) his testimony was not hearsay because it was offered "mostly for the purpose of showing the basis for his opinion that [testator] at the crucial time in question had the mental capacity to execute a will." *In re Will of Ricks,* 292 N.C. 28, 42, 231 S.E. 2d 856, 866 (1977).

[2] Similarly, caveators contend that certain testimony of the witness Townsend was incompetent because it was either hearsay, or in violation of G.S. § 8-51, or both. At the outset, we point out that Townsend was offered as a witness by caveators who now challenge two particular instances of testimony elicited from her on cross-examination. First, caveators attack the action of the trial judge in allowing Townsend to testify as to the reason that

the deceased requested a "no visitors" sign for his hospital door. It appears from the record that caveators had asked Townsend on direct examination about the sign, and she answered that she was not responsible for having it placed on the door. Later, on cross-examination, she testified, without objection, "I had nothing to do with the no visitors sign being placed on Glenn's hospital door. Glenn himself requested the sign." When asked why the decedent so requested, caveators objected and excepted to the overruling of their objection. Thus, Townsend was allowed to state: "Hattie was getting on his [nerves] and he had gotten tired of her making repeated statements, that she was his legal wife and he felt that she was no longer his legal wife."

While the entire matter of the "no visitors" sign might have been irrelevant, since the caveators first raised the question of the sign, and since the witness was allowed, without objection, to testify on cross-examination that the sign was put there at the deceased's request, we find no error in the witness' being permitted to explain how she reached this opinion. Assuming, *arguendo*, that the Court erred in allowing the testimony, no conceivable prejudice could have resulted to the caveators since the deceased's attitude toward his wife was manifest in all of the testimony.

[3] Secondly, caveators assert that the court erred in allowing Townsend to testify that the deceased gave "accurate" responses to questions at the social security office regarding the preparation of an affidavit legitimating Townsend's children. Responding to questions on cross-examination, Townsend in substance stated that the deceased's responses were accurate according to her personal knowledge. It is settled that the prohibitions of G.S. § 8-51 do not prevent a witness from testifying as to the acts and conduct of the deceased where the witness is merely an observer and is testifying to facts based upon independent knowledge. *In re Will of Bowling*, 150 N.C. 507, 64 S.E. 368 (1909); *March v. Verble*, 79 N.C. 19 (1878); 1 Stansbury's N.C. Evidence, *Witnesses* § 73 (Brandis rev. 1973). Townsend's characterization of the responses as accurate was obviously based on independent facts known to her otherwise than through personal transactions or communications with the deceased. Thus, this assignment of error is without merit.

Caveators' eighteenth and nineteenth assignments of error, based on a number of exceptions duly noted in the record, relate to the testimony of Margie Hedrick, who was also offered as a witness by the caveators, and who testified on direct examination that she had worked for deceased as his bookkeeper and accountant for approximately fifteen years; that she had advised him on business matters many .times, but that she did not advise him on personal matters; that she was named executrix under the "paper writing" in question; that she had driven Mr. Simmons to Pitts' office and back home on the day the purported will was prepared; and that she had gone over part of the completed will with the deceased before he executed it. Based on these exceptions, caveators argue that the court erred in allowing the witness on cross-examination to testify as to specific conversations she overheard between Pitts and Mr. Simmons when she accompanied him to the former's office for the preparation of the will in question. Caveators further contend that the court erred in not giving a limiting instruction to the jury with respect to such testimony.

We have carefully examined each exception upon which these contentions are based and find them to be without merit. The witness was offered by the caveators, and all the testimony challenged by these exceptions was fair cross-examination. Moreover, we note that the gist of the "objectionable" testimony concerned personal observations of the deceased by the witness Hedrick rather than "personal transactions or communications" with him. She was merely an observer of, and not a participant in, the conduct she described, and such testimony was clearly admissible. *In re Will of Bowling, supra; see also Hodges v. Hodges,* 257 N.C. 774, 127 S.E. 2d 567 (1962).

Furthermore, even assuming that the testimony was competent only for the limited purpose of showing a basis for Hedrick's opinion as to the deceased's testamentary capacity, *In re Will of Ricks, supra,* since the caveators did not request a limiting instruction, *In re Will of Thompson,* 248 N.C. 588, 104 S.E. 2d 280 (1958); *In re Will of Hinton,* 180 N.C. 206, 104 S.E. 341 (1920), under the circumstances of this case we find no error in the trial judge's failure to give a limiting instruction with respect to the testimony challenged by these exceptions.

[4] Based on assignments of error numbers 3, 19, and 28, caveators next assert that the court erred

by admitting testimony of propounders' witnesses without giving instructions limiting the consideration thereof by the jury to the issue of mental condition, while voluntarily giving such limiting instructions to testimony by caveators' witnesses, and then instructing in his charge that the limiting instructions applied only to testimony of heirs of Glenn Simmons.

As pointed out above, caveators did not request a limiting instruction with respect to the testimony of any of the witnesses who testified that, in their opinion, deceased had testamentary capacity. In our opinion, no prejudicial error was committed by the court in failing to give a limiting instruction with respect to the testimony of Pitts, Townsend, or Hedrick, for the reason that no request for such instruction was made. *In re Will of Thompson, supra; In re Will of Hinton, supra; see also In re Will of Kestler*, 228 N.C. 215, 44 S.E. 2d 867 (1947).

[5] Neither do we find prejudicial error with respect to the limiting instruction given in the charge. The trial judge instructed the jury that when

heirs of Glenn Edison Simmons have testified concerning the personal transactions and communications between that class of witness and Mr. Simmons, it is admitted in evidence and is competent only for the limited purpose of showing the basis of their opinion in respect to his mental capacity on the date and at the times they specified. . . .

In their brief caveators argue that the use of the word "heirs" in this instruction allowed the jury to give "unlimited consideration" to the testimony of Pitts and Hedrick, and to "take the instruction to mean that the rule did not apply to Ruth Townsend."

We do not agree. The challenged instruction has no application to the witness Pitts, since he was not an "interested witness" within the meaning of G.S. § 8-51. *In re Will of Ricks, supra; Propst v. Fisher, supra; see also In re Will of Brown*, 203 N.C. 347, 166 S.E. 72 (1932). Likewise, the challenged instruction has no application to the witness Hedrick since, even assuming that she was an "interested witness" within the meaning of G.S. § 8-51 because she was the designated executrix under the "paper writing" at issue, *Whitesides v. Green*, 64 N.C. 307 (1870), 1

Stansbury's N. C. Evidence, *Witnesses* § 68 (Brandis rev. 1973), she did not testify as to any "personal transaction" with the deceased. She testified as to her personal observations of certain of his conduct. *In re Will of Bowling, supra.*

Finally, the limiting instruction has no application to the testimony of Townsend since that portion of her testimony challenged by the caveators likewise did not relate to "personal transactions" with the deceased in violation of G.S. § 8-51. *Id.*

We therefore hold that the Court's charge with respect to the limiting instruction was free from prejudicial error.

By assignments of error numbers 25, 26, 29 and 30, based on seven exceptions duly noted, caveators attack that portion of the court's charge instructing the jury and applying the law with respect to testamentary capacity and undue influence. Suffice it to say that we have carefully examined each exception upon which these assignments of error are based and find them to be without merit.

[6] Caveators' assignments of error numbers 12 and 21, based on eight exceptions, attack the court's instructions limiting certain testimony of caveators' witnesses regarding conversations with the deceased to the issue of mental capacity. They argue that the court's use of the expression "mental capacity" precluded the jury from also considering this testimony on the issue of undue influence. According to the caveators, their evidence of conversations with the deceased showing that he was in a weakened physical state and had trouble eating; that he "could not see hardly to drive after it turned dark"; that his memory sometimes failed him; and that his mental condition had deteriorated, was competent evidence on the issue of deceased's susceptibility to undue influence, as well as mental capacity, and the jury should have been instructed accordingly. While such evidence may be pertinent to the issue of undue influence, *In re Will of Hinton, supra,* where there is a total absence of "other facts and circumstances tending to show that he was unable to exercise his will freely and intelligently," *Id.* at 216, 104 S.E. at 346, there is no evidence of undue influence. *In re Will of Ball,* 225 N.C. 91, 33 S.E. 2d 619 (1945). Evidence of mental or physical condition, standing alone, is not sufficient to raise the issue.

We have carefully examined the record in this case and find it devoid of any independent evidence of undue influence. Thus, we find no error in the limiting instruction complained of. Caveators got the benefit of this testimony under proper instructions. *See In re Will of Hall,* 252 N.C. 70, 113 S.E. 2d 1 (1960).

[7]   Caveators, by assignment of error number 23, assert that the court erred to their prejudice by "allowing propounders to open and close the arguments to the jury when propounders were allowed to put on substantive proof of mental capacity and lack of undue influence at the probate in solemn form [stage] of the trial." It has long been established in this State that the trial upon a caveat is a proceeding *in rem* to which there are, strictly speaking, no parties. *Syme v. Broughton,* 85 N.C. 367 (1881). And, even when, as here, caveators admit the due execution of the purported will, leaving only the issues of mental capacity and undue influence to be tried, propounders still have the privilege of opening and concluding the case for reasons well stated in *Syme v. Broughton, supra* at 369-70:

> The inquiry is . . . whether the paper propounded is his will or not. Both parties, the propounders and caveators, are actors for this purpose. The subscribing witnesses are the witnesses of the law, and when the will is once propounded, it is under the control and power of the court . . . . [T]he caveators have no . . . control or power . . . to admit the execution of the will so as to dispense with the proof required . . . for the law is explicit that a written will with witnesses can only be proved by *the oath* of at least two subscribing witnesses.
>
> . . .
>
> It follows, if the will must be proved by the subscribing witnesses, that the burden is upon the propounder, and he would have the privilege of opening and concluding. And when the will has been *prima facie* established . . . if the caveators should seek to defeat the will by proving the insanity of the deceased, the burden would be shifted to them, but that would not take from the propounder the right to open and conclude the argument. *McRae v. Lawrence,* 75 N.C., 289. [Emphasis in original.]

This assignment of error has no merit.

Caveators undertake to bring forward and argue additional assignments of error based on numerous exceptions. We have carefully examined these additional assignments of error and find them to be repetitive, inconsequential, and wholly without merit. No useful purpose would be served by further elaboration on the well-settled principles discussed under these assignments. We conclude that all parties to this litigation have had a fair trial, and the jury has rendered its verdict.

No error.

Judges MARTIN (Robert M.) and WEBB concur.