IN THE MATTER OF THE WILL OF HUGH B. HESTER, DECEASED

No. 8628SC531

(Filed 17 March 1987)

1. **Wills § 24— three purported wills—submission of issues as to one will only improper**

   The trial court abused its discretion by failing simultaneously to present issues to the jury on all three scripts purporting to be the decedent's will as indicated by the pleadings and the evidence, and the court's attempt to conduct a "bifurcated" trial in which one script was rejected as decedent's will during one "phase" of the trial before two other scripts were considered in the second "phase" constituted fatal error.

2. **Wills § 9.2— court's failure to enter final judgment in caveat proceeding—subsequent probate of another will—improper collateral attack**

   Because the trial judge refrained from entering a final judgment regarding decedent's purported 1983 will, no further entry upon the page of the will book setting aside the 1983 will could have been made, and, until such entry was made setting aside the probated 1983 will, it conclusively stood as the last will of decedent so that the subsequent probate of decedent's purported 1982 will by the clerk of superior court, as ordered by the court subsequent to the jury's rejection of the 1983 will, constituted an impermissible collateral attack; moreover, the superior court retained jurisdiction of decedent's estate, as the court stated in its order, and the clerk of superior court accordingly was without jurisdiction to receive other purported wills into probate.

3. **Wills § 16— caveat proceeding—failure to give notice to decedent's relatives—dismissal not required**

   The trial court did not err by failing to dismiss the caveat proceeding due to caveators' failure to give notice of the caveat proceeding to several first cousins of deceased as required by N.C.G.S. § 31-33, since caveators had no knowledge of other relatives of deceased until after trial had begun, and the heirs at law of a deceased testator who have no knowledge of a caveat proceeding and who are not cited under N.C.G.S. § 31-33 are not estopped to file a second caveat nor are they bound by the former judgment sustaining the validity of the script.

4. **Wills § 26— caveat proceeding—caveators' interest in estate**

   There was no merit to propounders' contention that the trial court erred by failing to dismiss the caveat proceeding at the close of the first phase of the trial on the ground that caveators did not prove that they were persons who were interested in the estate, and that, though caveators as beneficiaries under a prior will did have standing to caveat, they were required, in the same proceeding, to prove their alleged interest.

5. **Wills § 22.5— caveat proceeding—statements by testator—testimony of named executor not excluded by dead man's statute**

   A named executor is not a person interested in the event of the caveat proceeding within the meaning of the dead man's statute so as to require ex-

clusion of his testimony concerning communications with the testator. N.C.G.S. 8C-1, Rule 601(c).

Judge EAGLES dissenting.

APPEAL by propounders from judgment entered 21 November 1985 by *Lewis, Judge,* in Superior Court, BUNCOMBE County. Appeal by caveators Meredith College from order for attorneys' fees entered 13 March 1986 by *Lewis, Judge,* in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 28 October 1986.

Retired Brigadier General Hugh B. Hester (General Hester) died in Buncombe County on 25 November 1983. General Hester, a widower, was eighty-eight years old at the time of his death. His wife Polly died in 1981. He had no children or direct issue. His closest blood relatives were a niece, Katherine Hester Watson, and several unidentified relatives, all having the same degree of kinship. General Hester's death certificate listed the causes of death as prostate cancer, senile dementia, and gastrointestinal bleeding. At the end of 1982, General Hester's estate was valued at approximately $880,000.00 and, at the time of the trial, exceeded one million dollars. On 28 November 1983 a writing dated 18 November 1983 (the 1983 will) was submitted for probate in common form before the Clerk of Superior Court, Buncombe County. The 1983 will named Colonel Ted P. Watson, the husband of Katherine Watson, as executor and left the major portion of General Hester's estate to his niece, Katherine Watson, and the rest to members of her family. On 14 June 1984 a caveat to the 1983 will was filed by Mars Hill College (Mars Hill), Meredith College (Meredith), the University of North Carolina at Greensboro (UNC-G), and Ms. Eleanor Pittenger, one of the surviving sisters of General Hester's deceased wife Polly. The caveat alleged that the caveators were beneficiaries, along with First Baptist Church of Asheville, under a writing dated 18 June 1982 (the 1982 will). The caveators challenged the 1983 will on three grounds: (1) improper execution, (2) lack of mental capacity of the testator and (3) undue influence by General Hester's niece Katherine Watson or her husband Colonel Watson upon General Hester. The 1982 will named Arthur Price, General Hester's accountant since 1979 who also prepared the 1982 will, as executor. General Hester gave Arthur Price his power of attorney in a separate instrument dated 1

October 1981. Arthur Price served on the Board of Deacons at First Baptist Church of Asheville, a named beneficiary under the 1982 will.

On 24 September 1985 this matter went to trial. The 1983 will was produced in court, and the 1982 will was offered into evidence. During the caveat proceeding a third paper writing dated 8 June 1981 (the 1981 will) was produced. The 1981 will provided for equal division of the estate among Katherine Watson, his niece, Eleanor Pittenger, his deceased wife's sister, and five other relatives. Arthur Price was named as executor.

After the court received evidence from both caveators and propounders as well as evidence regarding the 1981 will, the court submitted issues to the jury regarding the validity of the 1983 will only. Propounders did request that all three writings be submitted to the jury, but the court denied their motion. On 1 October 1985 the jury returned its verdict, declaring the 1983 will invalid. No judgment was entered. The court ordered the jury to reconvene on 18 November 1985 and ordered that "[i]nterested persons shall offer any purported will or wills to the Superior Court for probate during the week of 7 October 1985; and any caveat shall be filed within ten (10) days after the will is offered for probate before the Superior Court." The caveators of the 1983 will submitted the 1982 will to the Clerk of Superior Court for probate; the propounders of the 1983 will filed a caveat to the 1982 will. On 18 November 1985 the jury reconvened and the trial continued before the same jury. The court received evidence relevant to both the 1982 and 1981 wills and submitted issues to the jury regarding the 1981 and the 1982 wills. On 20 November 1985 the jury returned a verdict declaring the 1982 will valid. Judgment was entered accordingly 21 November 1985. Propounders of the 1983 will appealed. On 13 March 1986 the court ordered attorneys' fees of all parties to the court proceedings to be paid from the estate of General Hester pursuant to G.S. 6-21(2). Caveator Meredith appealed regarding that part of the attorney fee award which orders the payment of propounders' attorneys' fees.

*Roberts Stevens & Cogburn, P.A., by Landon Roberts and Glenn S. Gentry, for propounder appellants.*

*Boyce, Mitchell, Burns & Smith, P.A., by Susan K. Burkhart, for caveator appellee Meredith College.*

In re Will of Hester

*Patla, Straus, Robinson & Moore, P.A., by Richard S. Daniels, for caveator appellees Mars Hill College and Eleanor Pittenger.*

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Charles J. Murray, for caveator appellee University of North Carolina at Greensboro.*

JOHNSON, Judge.

The threshold issue in this case is whether the bifurcated proceeding, whereby the jury decided the validity of the 1983 will separately from its determination of the validity of the 1981 and 1982 wills, is in fact two proceedings and therefore void and erroneous under the authority of *In re Will of Charles*, 263 N.C. 411, 139 S.E. 2d 588 (1965).

Propounders also raise two related issues, to wit: whether the court erred in failing to sign a written judgment after the 1 October 1985 verdict determined the invalidity of the 1983 will; and whether the court erred by ordering the filing of propounder's caveat to the 1982 will within ten days of its being offered for probate. As all three issues are procedural issues regarding the probate of a will and a caveat proceeding, we will address them together.

The word "probate" when used in reference to a document purporting to be a will means the judicial process by which a court of competent jurisdiction in a duly constituted proceeding tests the validity of the instrument before the court and ascertains whether it is the last will of the deceased. *In re Will of Lamb*, 303 N.C. 452, 459, 279 S.E. 2d 781, 786 (1981). The Clerk of the Superior Court has exclusive and original jurisdiction for the probate of wills. *Morris v. Morris*, 245 N.C. 30, 32, 95 S.E. 2d 110, 112 (1956). *See* G.S. 31-12. The purpose of probate is to establish that the instrument in question was executed in a manner prescribed by law and that it constitutes the last will of the deceased. North Carolina recognizes two methods of probating a will. The will may be probated in common form or solemn form. 1 N. Wiggins, *Wills and Administration of Estate in N.C.* sec. 118 (2d ed. 1983). The probate of a will in solemn form is in the nature of a decree pronounced in open court where all interested parties

have been duly cited and is irrevocable. *In re Will of Ellis*, 235 N.C. 27, 32, 69 S.E. 2d 25, 28 (1952). Because the result cannot be attacked by subsequent caveat, probate in solemn form calls for the observance of a more complex procedure than is required for probate in common form. *See* 1 N. Wiggins, *supra*, sec. 118, at 200. The probate of a will in common form is an *ex parte* proceeding, and no one interested is before the clerk except the propounders and witnesses. *In re Will of Chisman*, 175 N.C. 420, 421, 95 S.E. 769, 770 (1918). "It is settled law that where the clerk of the superior court probates a will in common form and records it properly, the record and probate are conclusive as to the validity of the will until vacated on appeal or declared void by a competent tribunal." *In re Will of Spinks*, 7 N.C. App. 417, 423, 173 S.E. 2d 1, 5, *disc. rev. denied*, 276 N.C. 575, --- S.E. 2d --- (1970). Hence, a will probated in common form still stands as the last will and testament until declared void in a direct proceeding in the nature of a caveat. *In re Will of Burton*, 267 N.C. 729, 733, 148 S.E. 2d 862, 865 (1966). After recordation of probate in common form, the clerk is limited to the correction of only an error in expression rather than an error in judgment. *In re Will of Hine*, 228 N.C. 405, 410, 45 S.E. 2d 526, 530 (1947). The power of the clerk does not extend to setting aside the probate of a will in common form upon grounds which should be raised by caveat. *Id.*

The right to contest a will directly by caveat is statutory and in derogation of the common law; hence, the statutory procedures must be strictly construed. *In re Will of Winborne*, 231 N.C. 463, 466, 57 S.E. 2d 795, 799 (1950). When a caveat is filed the clerk of superior court transfers the proceeding to the civil issue docket of the superior court to the end that the issue *devisavit vel non* may be tried by a jury. *Brissie v. Craig*, 232 N.C. 701, 704, 62 S.E. 2d 330, 333 (1950). *See* G.S. 31-33. The caveat suspends proceedings under the probated will upon the giving of the bond. G.S. 31-36. When a caveat is filed with the clerk of superior court, it is the statutory duty of the clerk to make an entry upon the page of the will book where such last will is recorded, evidencing that such caveat has been filed. G.S. 31-37. When such caveat results in final judgment with respect to such will, the clerk of superior court shall make a further entry upon the page of the will book "to the effect that final judgment has been entered, either sustaining or setting aside such will." G.S. 31-37.

In a majority of jurisdictions, an after-discovered will can be admitted to probate, although a previously probated will has not been set aside. 1 N. Wiggins, *supra*, sec. 113, at 190. North Carolina follows the minority rule whereby the first will must be set aside before the second will can be admitted to probate. *See id.* The attempt to probate the after-discovered will is considered to be a collateral attack upon the probate of the first will. *Id.* A will cannot be attacked in a collateral manner. *Mills v. Mills*, 195 N.C. 595, 143 S.E. 130 (1928). Where a paper writing has been duly probated in common form, the offer of proof of a will alleged to have been subsequently executed by the testator is an impermissible collateral attack, and the clerk is without jurisdiction to set aside the probate upon such proof. *In re Will of Puett*, 229 N.C. 8, 47 S.E. 2d 488 (1948).

Here, propounders probated the 1983 will in common form. Caveators filed a caveat wherein they alleged that the 1983 will "is not the Last Will and Testament of the deceased [Hugh B. Hester]" but that the 1982 will "is the duly executed and proper Last Will and Testament of Hugh B. Hester, deceased." On 14 June 1984, after caveators gave a $200 cash bond, the Clerk of Superior Court of Buncombe County entered an order transferring the cause to the Superior Court Division for a jury trial. The caveat proceeding came on for hearing before a jury on 24 September 1985. Although the majority of the evidence focused on the execution of the 1983 will, the court received evidence concerning all three wills at issue. All three wills were introduced as exhibits. Both propounders and caveators rested their cases. The court gave the jury four issues to decide. Each issue concerned only the 1983 will, despite requests by propounders for issues on all three wills. After the jury decided that the 1983 will was invalid, the court stated the following:

> THE COURT: Members of the jury, in this case the law seems to require that in these types of proceedings where there may be more than one will applicable that all the wills should be considered and probated in the same case.

> The procedure, then, as suggested in some of the cases, would mean that upon the rejection of one of the wills the jury has to consider the other will or wills to the end that the estate can be properly processed without undue delay.

I concluded that to do that in this particular case would have led to some confusion, because the Propounders of this will, the latest will, would become the Caveators in the will of 1982, and the Caveators of the will in '83 become the Propounders of the will of '82.

So now that we have your verdict in which you have rejected the 1983 will we are going to need your help in considering the other will or wills, applying some of the same facts and most of the same law. In other words, I have, in effect, bifurcated or divided the trial into two stages.

These litigants will perhaps need some additional work to do before we consider the other two wills, and I am, therefore, going to adjourn this proceeding as not completed to final judgment and hope to convene again on the 18th of November of 1985 to complete the work necessary to properly administer the estate of Hugh B. Hester. So what I am saying is that I'm asking you to bear with us and return on November the 18th for a conclusion of this trial.

On 18 November 1985, court reconvened before the same jury. The court received testimony regarding only the 1982 and 1981 wills. Issues regarding these wills went to the jury, which returned a verdict that the 1982 will was Hester's true and final testament.

[1]  On the one hand, the conduct of the trial rests in the sound discretion of the trial court. *Marcoin, Inc. v. McDaniel,* 70 N.C. App. 498, 508, 320 S.E. 2d 892, 899 (1984), *disc. rev. denied,* 312 N.C. 797, 325 S.E. 2d 631 (1985). Absent an abuse of discretion, the result will not be disturbed on appeal. *Id.* The order of proof is likewise within the discretion of the trial court. *In re Westover Canal,* 230 N.C. 91, 95, 52 S.E. 2d 225, 228 (1949). On the other hand, it has been held that any script purporting to be the decedent's will should be offered and its validity determined in *the* caveat proceeding. *In re Will of Charles, supra,* at 416, 139 S.E. 2d at 592 (emphasis added). The Court in *Charles* held that it would be error to exclude consideration of a writing purported to be the will by those attempting to intervene in the caveat, so long as objection was made. *Id.* Here propounders timely made objection to only the 1983 will being considered on 1 October 1985. It is

immaterial whether those appearing and objecting are propounders rather than intervenors. *See In re Will of Puett, supra*, at 11, 47 S.E. 2d at 491. We hold that in light of *In re Will of Charles, supra*, the court abused its discretion by failing to simultaneously present issues to the jury on all scripts purporting to be the decedent's will as indicated by the pleadings and the evidence. To characterize the two "phases" of the "bifurcated" trial as one proceeding is to engage in fiction. It is not possible to determine the likelihood that the jury would have reached a different result had it had all purported wills together at one sitting. The error is fatal.

This same error perpetuated further procedural errors that twist logic and law. Prior to the second "phase" of the trial the court refused to sign a proffered judgment holding the 1983 will invalid. Instead the court issued an order requiring caveators to offer their will for probate and requiring propounders to file a caveat to the 1982 will within ten days thereof. Propounders assigned error to both these judicial actions. At the opening of the second phase of the trial the court informed the jury as follows:

So now with the parties reversed, the Propounders now are of the 1982 will. . . .

. . . .

The Caveators now become the Propounders in the first proceeding. . . . Otherwise the parties are the same.

[2] In a contrived effort to satisfy the *Charles* rule the court refrained from entering a final judgment regarding the 1983 will. The last entry made by the Clerk of Court of Buncombe County regarding the probated 1983 will noted the filing of a caveat to the 1983 will in compliance with G.S. 31-37. Because final judgment had not been entered, no further entry upon the page of the will book setting aside the 1983 will could have been made. G.S. 31-37. Until such entry was made setting aside the probated 1983 will, it conclusively stood as the last will of Hugh B. Hester. Hence, the subsequent probate of the 1982 will by the Clerk of Superior Court, as ordered by the court on 1 October 1985, constituted an impermissible collateral attack. Moreover, Superior Court retained jurisdiction of General Hester's estate, as the

court stated in its 1 October 1985 order. Accordingly, the Clerk of Superior Court was without jurisdiction to receive other purported wills into probate. For all the foregoing reasons we vacate the judgment and remand for a new trial.

We will address those remaining Assignments of Error, which if left unresolved, could lead to error at the new trial.

[3] In the next Assignment of Error, propounders contend that the court erred by failing to dismiss the caveat proceeding due to caveators' noncompliance with G.S. 31-33. G.S. 31-33 provides, in pertinent part, that after filing a caveat and giving bond, the "caveator shall cause notice of the caveat proceeding to be given to all devisees, legatees, or other persons in interest. . . ." G.S. 31-33. Specifically, propounders contend that the caveators failed to give notice to "several first cousins who were also related to General Hester at the same level of consanguinity" as Hester's niece Katherine Watson, a major beneficiary under the 1983 will, and that these cousins are interested persons to whom service is mandatory under G.S. 31-33. We disagree.

According to the evidence, caveators had no knowledge of other relatives of the deceased until this information was elicited in the first phase of the trial. We note that propounders did not move to dismiss the entire proceeding on this ground until 19 November 1985, near the close of the second phase of the trial. Persons who will share in the estate under the law governing intestacy in case a script which purports to be the will of the deceased is adjudged invalid are proper persons to receive notice and participate in the proceedings within the meaning of G.S. 31-33. *Brissie v. Craig, supra,* at 705, 62 S.E. 2d at 333. However, persons who qualify as persons interested in the estate are not necessarily equivalent to necessary parties. *In re Will of Brock,* 229 N.C. 482, 488, 50 S.E. 2d 555, 559 (1948). The decision whether certain persons are necessary parties to the caveat proceeding is within the court's discretion. *Id.* Under these facts the court did not abuse its discretion by denying propounders' motion to dismiss on the ground that all persons interested in the estate had not been notified. G.S. 31-32 affords protection to any interested persons who do not receive notice. The heirs at law of a deceased testator who have no knowledge of a caveat proceeding and who were not cited under G.S. 31-33 are not estopped to file a

second caveat nor are they bound by the former judgment sustaining the validity of the script. *Mills v. Mills, supra,* at 599, 143 S.E. at 132. This Assignment of Error is overruled.

**[4]** Propounders contend in their next Assignment of Error that the court erred by failing to dismiss the caveat proceeding at the close of the first phase of the trial on the ground that caveators did not prove that they are persons who are interested in the estate. Specifically propounders contend that "[a] beneficiary under a prior will does have standing to caveat a will but such a beneficiary must, in the same proceeding, prove the interest alleged." We disagree.

A caveat is an *in rem* proceeding, *In re Will of Ashley,* 23 N.C App. 176, 181, 208 S.E. 2d 398, 401, *disc. rev. denied,* 286 N.C. 335, 210 S.E. 2d 56 (1974), perhaps more strictly so regarded than any other proceeding with which the courts deal, *In re Will of Brock, supra,* at 488, 50 S.E. 2d at 559. The rules peculiar to a caveat stem from the *in rem* nature of the proceeding. *Id.* Here, as in *In re Will of Belvin,* 261 N.C. 275, 134 S.E. 2d 225 (1964), the caveators alleged the probated will was invalid on grounds of undue influence and lack of mental capacity and alleged that they are beneficiaries under a will of the deceased made at a time when the testator possessed mental capacity. "If the facts be as caveators allege, they are interested in the estate. . . ." *Id.* at 276, 134 S.E. 2d at 226. Because the proceeding is *in rem,* the proceeding must go on until the issue *devisavit vel non* is appropriately answered; nonsuit cannot be taken by the propounders or the caveators. *In re Will of Brock, supra,* at 488, 50 S.E. 2d at 559. This Assignment of Error is overruled.

**[5]** In propounders' next Assignment of Error, they contend the court impermissibly allowed the executor under the 1982 will to testify regarding "contents of oral communications between himself and [the deceased] General Hester." Propounders contend that the admission of such communications is in violation of Rule 601(c), N.C. Rules Evid., also known as "the dead man's statute." We disagree.

Propounders group eleven exceptions under this Assignment of Error. After reviewing the record on appeal and the entire transcript of the proceedings we have determined that of these eleven exceptions, five exceptions address testimony elicited from

**In re Will of Hester**

Arthur Price concerning oral communications between Arthur Price and General Hester. Our Rules of Appellate Procedure require that our review be confined to those exceptions which pertain to the argument presented. Exceptions "in support of which no reason or argument is stated or authority cited, will be taken as abandoned." Rule 28(b)(5), N.C. Rules App. P.

Rule 601, N.C. Rules Evid., disqualifies certain witnesses from testifying. A witness' testimony is incompetent under the dead man's statute if the witness is a party or is interested in the event; his testimony relates to a personal communication with the decedent; the action is against a personal representative of the decedent or a person deriving title or an interest from, through, or under the decedent; or the witness is testifying in his own behalf. *See* Rule 601(c), N.C. Rules Evid.; *Godwin v. Wachovia Bank & Trust Co.*, 259 N.C. 520, 528, 131 S.E. 2d 456, 462 (1963). The purpose of this statute is to exclude evidence of statements of deceased persons, since those persons are not available to respond. *Culler v. Watts*, 67 N.C. App. 735, 737, 313 S.E. 2d 917, 919 (1984). In a proceeding for the probate of a will, both propounders and caveators are parties interested in the event within the meaning and spirit of section (c). *In re Will of Brown*, 194 N.C. 583, 595, 140 S.E. 192, 199 (1927). A beneficiary under a will may not testify as to communications with the deceased, but he may give his opinion, based on his own observations, as to the issue of the decedent's mental capacity at the time of the execution of the will and testify to transactions with the deceased as being a part of the basis of his opinion. *Id.* To be disqualified as a witness interested in the event of the action, the witness must have a direct legal or pecuniary interest in the outcome of the litigation. *Etheridge v. Etheridge*, 41 N.C. App. 39, 42, 255 S.E. 2d 735, 738 (1979).

In the case at hand, Arthur Price was named as executor of the 1982 will. He also drafted the 1982 will. At a proper caveat proceeding wherein all three wills are considered at once, Arthur Price would be a named executor under the writing submitted by the caveators. We agree with the Minnesota court which stated, "[w]hether the witness would ever be appointed executor or, if appointed, whether he would ever receive any pecuniary benefit therefrom, [is] neither certain nor immediate." *Geraghty v. Kilroy*, 103 Minn. 286, 289, 114 N.W. 838, 839 (1908). Hence, we

hold that a named executor is not a person interested in the event of the caveat proceeding within the meaning of the dead man's statute.

Propounders contend that between General Hester's death and trial, Arthur Price had already incurred time and expenses in anticipation of being the executor and had billed the estate accordingly. Arthur Price, propounders contend, would be compelled to refund or forego these fees if propounders proved successful in the action. Propounders cite *Owens v. Phelps*, 92 N.C. 231 (1885) as authority for their position. *Owens v. Phelps, supra*, is inapposite. In *Owens v. Phelps, supra*, the plaintiffs sought to rescind a contract to purchase land entered into by the deceased. Propounders' further contention that Arthur Price is interested in the action because he is a Deacon of the First Baptist Church of Asheville, a beneficiary under the 1982 will, is equally without merit. Membership in a church congregation, albeit distinguished membership, is too tenuous an interest to come within the meaning of the dead man's statute. *Lawrence v. Hyman*, 79 N.C. 209 (1878). Because Arthur Price does not qualify as a person interested in the outcome of the caveat proceeding, his testimony regarding oral communications with General Hester is competent. Further, because Price drafted the 1982 will, his testimony regarding General Hester's mental capacity was properly admitted for the purpose of showing the basis for his opinion that at the crucial time General Hester had the requisite mental capacity. *In re Will of Simmons*, 43 N.C. App. 123, 128, 258 S.E. 2d 466, 470 (1979), *disc. rev. denied*, 299 N.C. 121, 262 S.E. 2d 9 (1980). This Assignment of Error is overruled.

In light of our holding we need not address the Assignment of Error regarding attorneys' fees. For the foregoing reasons, the judgment is vacated and this matter is remanded for a

New trial.

Judge ARNOLD concurs.

Judge EAGLES dissents.

Judge EAGLES dissenting.

I respectfully dissent. Here the trial court fashioned, in its discretion, an orderly procedure by which the traditional require-

ment that the several purported wills be considered in one proceeding could be reconciled with the paramount concern that the jury understand the evidence and not be unnecessarily confused. In bifurcating the trial but maintaining the required unity by having the same jury hear all the evidence, the trial court assured that the parties' competing claims as to the testator's competency at various times and the validity of the several purported wills were fully heard in one proceeding but were considered one at a time rather than all at once. In my judgment the trial court's innovative solution offends no mandate of our probate law, makes extraordinary good sense, and does not constitute an abuse of the trial court's discretion. I would vote that under these facts the bifurcated procedure is permissible in the trial court's discretion and that no abuse of discretion occurred here.

The majority maintains that the trial court's bifurcation of the trial amounted to separate trials, even though the same judge and jury were involved throughout. The majority's reading of *In re Will of Charles*, 263 N.C. 411, 139 S.E. 2d 588 (1965), would restrict the trial court's discretion so as to bar bifurcated trials in caveat proceedings no matter how complex or convoluted the evidence. I suggest that *Charles* is primarily directed at the potential for conflicting results arising from separate trials with different juries, judges and parties. It does not address the issue of the trial court's discretion as to order of proof, recesses in the proceeding or authority to bifurcate a complex caveat proceeding.

Similarly I disagree with the majority's assertion that the trial court's decision to bifurcate the trial is an error of fatal proportions. The majority asserts that "it is not possible to determine the likelihood that the jury would have reached a different result. . . ." From that broadside conclusion the majority assumes the alleged error is fatal and requires a new trial. There is no showing of prejudice, no showing of the likelihood of a different result and no indication of what harm to appellants may have occurred.

The majority has substituted its own discretion for that of the trial court in an area which traditionally has been, and should continue to be, reserved to the trial judge. Though the majority asserts an abuse of discretion, I perceive none. The trial court was faced with an exceptionally prolix proceeding involving three

---

---

purported wills and allegations of undue influence and lack of testamentary capacity at the time each document was signed. A finding that the latest executed document was the testator's will, i.e., that it was executed by the testator with the requisite intent and formality and in the absence of undue influence, would have had the practical effect of mooting the issues involving the two earlier executed documents. If the trial had not been bifurcated, the jury would have been instructed to do precisely what they did here, i.e., evaluate the purported wills, assertions of undue influence and the testator's competency in the reverse chronological order of the purported dates of execution. Since that was done here, albeit in a recessed, bifurcated proceeding but before the same jury and judge, no prejudice can be shown.

I agree with the majority that the additional issues raised on appeal present no reversible error. I would go further and would vote that in the entire proceeding there is no prejudicial error.