STATE OF NORTH CAROLINA v. CARL JOHNSON

No. 738SC678

(Filed 20 February 1974)

**1. Criminal Law § 99— belittling witness — expression of opinion by court**
    In a prosecution for disseminating obscenity in a public place the trial court committed prejudicial error in ridiculing and belittling a witness of defendant by questioning him with respect to his knowledge of literature, asking him questions concerning his high school education, and commenting that, "He [the witness] really doesn't know anything and he thinks that he does."

**2. Obscenity— constitutionality of statute**
    G.S. 14-190.1 prohibiting the intentional dissemination of obscenity in a public place is constitutional.

APPEAL by defendant from *Martin (Perry), Judge,* 9 April 1973 Session of Superior Court held in WAYNE County.

This is a criminal action wherein the defendant, Carl Johnson, was charged in two warrants, proper in form, with intentional dissemination of obscenity in a public place in violation of G.S. 14-190.1. Upon a verdict of guilty in the district court, the defendant appealed and received a trial *de novo* in Superior Court.

At the completion of the State's evidence, one of the charges against the defendant was dismissed and a verdict of guilty was returned by the jury as to the other offense. Defendant was sentenced to a term of imprisonment of two years; however, the sentence was suspended contingent upon defendant's compliance with certain conditions specified by the court. The defendant appealed.

*Attorney General Robert Morgan and Assistant Attorney General John R. B. Matthis for the State.*

*Smith, Carrington, Patterson, Follin & Curtis by Michael K. Curtis and J. David James for defendant appellant.*

HEDRICK, Judge.

[1] Defendant maintains that the trial court committed error by ridiculing and casting aspersions on the testimony of a witness for the defendant. The specific remarks of the court complained of involve comments made by the trial judge during the

course of the testimony of Lewis Price, a student at Wayne Community College. The record discloses the following colloquy:

(COURT: Mr. Price, you have been asked questions about great works of literature; can you name three great works of literature?

A. My three favorites I can name are Dostoevski and his Crime and Punishment, and I can name Dickens and Tale of Two Cities, and I guess my other favorite would be Steinbeck and The Grapes of Wrath.

COURT: I assume many years ago you read Paradise Lost?

A. I'm not versed in that.

COURT: You haven't?

A. I've read excerpts here and there.

COURT: You did go to high school?

EXCEPTION 84

A. Yes, sir.)

(COURT: Where on earth did you go to?

A. To a very good high school in Pittsburgh.

COURT: Where?

A. In the suburbs of Pittsburgh.

EXCEPTION 85

COURT: You don't know who wrote Paradise Lost?

A. Yes, sir, Milton.)

(COURT: Have you ever read Pilgram's Progress?

A. No, sir, I have read excerpts as well. I have read other works of contemporary literature that I compare more favorably and that I think are more important to myself.

COURT: You say you read something more important than Pilgrim's Progress and Paradise Lost?

A. Since Paradise Lost, a lot of—

COURT: You all get an objection to anything that I ask. He really doesn't know anything and he thinks that he does. Do you know what century Henry Thoreau lived?

EXCEPTION 86

A. Yes, sir, he lived in the, a time of, what is his philosophy? Henry Thoreau lived in the early Nineteenth Century, and Thoreau wrote Walden, and Thoreau lived in the hills of New England. He grew beans and he talked about the good, simple life, sir.)

It is not only the right but the duty of the trial judge to control the examination and cross-examination of witnesses, *State v. Frazier,* 278 N.C. 458, 180 S.E. 2d 128 (1971); *State v. Mansell,* 192 N.C. 20, 133 S.E. 190 (1926); and "[i]t has been the immemorial custom for the trial judge to examine witnesses who are tendered by either side whenever he sees fit to do so . . . ", *State v. Horne,* 171 N.C. 787, 88 S.E. 433 (1916); however, "[h]e should at all times be on the alert, lest, in an unguarded moment, something be incautiously said or done to shake the wavering balance which, as a minister of justice, he is supposed, figuratively speaking, to hold in his hands. Every suitor is entitled by the law to have his cause considered with the 'cold neutrality of the impartial judge' and the equally unbiased mind of a properly instructed jury. This right can neither be denied nor abridged." *Withers v. Lane,* 144 N.C. 184, 56 S.E. 855 (1907).

Whether there has been a breach of the "cold neutrality of the impartial judge" is determined by the probable effect on the jury of the improper comments and not the motive of the court in making such statements. *State v. Lea,* 259 N.C. 398, 130 S.E. 2d 688 (1963). "Jurors respect the Judge and are easily influenced by suggestions, whether intentional or otherwise, emanating from the bench." *State v. Holden,* 280 N.C. 426, 185 S.E. 2d 889 (1972). Regardless of the motive or intent of the trial judge in making his comments in the instant case, these remarks tend to ridicule and belittle the witness of defendant, impair his credibility, and prejudice defendant's case. *State v. Frazier, supra.* For error in making such remarks the defendant must be awarded a new trial.

[2]   Defendant's assignment of error to the trial judge's denial of his motion to quash the warrant presents the question of

the constitutionality of G.S. 14-190.1. On the authority of *State v. Bryant* and *State v. Floyd,* 20 N.C. App. 223, 201 S.E. 2d 211 (Filed 19 December 1973) holding G.S. 14-190.1 to be constitutional, this assignment of error is overruled. Furthermore, we hold there was sufficient, competent evidence to require the submission of this case to the jury on the charge set out in the warrant.

We do not discuss defendant's other assignments of error since they are not likely to occur on a new trial.

For the reasons stated above, the defendant is entitled to a

New trial.

Chief Judge BROCK and Judge BALEY concur.