IN THE MATTER OF THE WILL OF: MARY M. YELVERTON, Deceased

No. COA05-771

No. COA05-772

(Filed 5 July 2006)

**1. Appeal and Error— preservation of issues—failure to cite authority**

Caveator's appeal in a contested will case from the trial court's 17 December 2004 ruling that caveator could not retain possession of the testator's real property pending appeal of the caveat proceeding is dismissed, because caveator failed to cite any statutes, case law, or other authority in support of his argu-

**IN RE WILL OF YELVERTON**

[178 N.C. App. 267 (2006)]

ments as to why the order was erroneous as required by N.C. R. App. P. 28(b)(6).

## 2. Appeal and Error— appealability—denial of summary judgment

Although caveator contends the trial court erred in a contested will case by denying his motion for summary judgment with respect to the judgment probating the will, the trial court's denial of summary judgment cannot constitute reversible error when the issues in this case were decided following a trial on the merits.

## 3. Evidence— unavailable witness—denial of motion for continuance—abuse of discretion standard

The trial court did not abuse its discretion in a contested will case by denying caveator's motion for a continuance made at the close of propounder's evidence after propounder's notary witness had informed him at the last minute that she was unavailable to testify, because: (1) caveator's motion for a continuance was made in the middle of trial after the case had been set peremptorily ahead of time based on propounder being stationed overseas; (2) caveator knew he could not compel the witness to testify by service of a subpoena due to her relocation to Maryland, and he made no attempt to secure her testimony through a deposition *de bene esse*; and (3) a hardship would have resulted from a continuance in addition to caveator's failure to exhaust reasonable methods of securing the witness's testimony.

## 4. Evidence— order concerning notary—failure to lay proper foundation

The trial court did not err in a contested will case by excluding evidence of an order from the North Carolina Secretary of State regarding propounder's notary witness and testimony from caveator relating to this order, because: (1) caveator failed to lay a proper foundation for the evidence's admission; (2) caveator made no showing that he has personal nonhearsay knowledge such that he could testify that the pertinent order refers to his mother's will; and (3) nothing on the fact of the order indicated that the Secretary of State's order has anything at all to do with this case, and caveator's offer of proof does not establish that he could offer admissible testimony supplying the necessary connection.

**5. Evidence— Dead Man's Statute—sentimental interest—facts based on independent knowledge**

The trial court did not err in a contested will case by allowing propounder and his mother to testify during trial about statements made to them by the testatrix, because: (1) the Dead Man's Statute did not bar propounder's mother from testifying merely based on the fact that she was aligned with propounder since her son was above the age of majority, and caveator failed to identify any legal or pecuniary interest of the mother other than a mere sentimental interest; (2) it is questionable whether propounder's assertion that his grandmother told him what was in an envelope, without any testimony as to what the testator actually said, violated N.C.G.S. § 8C-1, Rule 601(c); and (3) assuming arguendo that propounder's testimony was inadmissible, caveator failed to demonstrate that any resulting error was prejudicial.

**6. Judges— partiality—questioning witnesses directly**

The trial court in a contested will case did not display partiality by questioning two witnesses directly, and caveator is not entitled to a new trial on this basis, because: (1) the judge's questions were neither biased toward one party nor were they geared toward eliciting particular answers from the witnesses; and (2) the probable effect the exchanges had on the jury was clarification.

**7. Appeal and Error— preservation of issues—motion for directed verdict—motion for judgment notwithstanding verdict—waiver**

Although caveator contends the trial court erred in a contested will case by denying his motion for a directed verdict at the close of propounder's evidence and motion for judgment notwithstanding the verdict (JNOV), caveator's arguments were not properly preserved because: (1) although caveator moved for directed verdict at the close of propounder's evidence, he did not renew his motion at the close of all the evidence and thus waived his directed verdict motion; and (2) caveator's waiver of the motion for a directed verdict also precludes a review of his motion for JNOV.

**8. Wills— motion for new trial—sufficiency of evidence—self-proved will—attesting witnesses**

The trial court did not err by denying caveator's motion for a new trial based on insufficiency of the evidence, because: (1) pro-

pounder offered both evidence of a self-proved will and evidence from attesting witnesses regarding the circumstances surrounding the execution and witnessing of the will; and (2) caveator failed to show the trial court abused its discretion.

Appeal by caveator from judgment entered 16 December 2004 and orders entered 17 December 2004 and 17 February 2005 by Judge Jerry Braswell in Wayne County Superior Court. Heard in the Court of Appeals 12 January 2006.

*Robert E. Fuller, Jr. for caveator-appellant.*

*Baddour, Parker & Hine, PC, by Philip A. Baddour, Jr., for propounder-appellee.*

GEER, Judge.

Caveator Mansel Yelverton has brought two separate appeals arising out of his challenge to the will of the testator, Mary M. Yelverton. As the issues presented in the appeals involve common questions of law, we have consolidated the appeals for purposes of decision.

In COA05-771, caveator appeals from an order instructing him to vacate his mother's real property and allow his nephew, propounder Kelvin Artis, to take possession. We dismiss this appeal because caveator has cited no authority in support of his arguments.

In COA05-772, caveator appeals from a judgment probating his mother's will and an order denying his motion for judgment notwithstanding the verdict or, in the alternative, a new trial. Based upon our review of the record, we find no reversible error and, therefore, affirm the judgment and order of the trial court.

---

The North Carolina General Statutes set forth the following requirements for attested written wills:

(a) An attested written will is a written will signed by the testator and attested by at least two competent witnesses as provided by this section.

(b) The testator must, with intent to sign the will, do so by signing the will himself or by having someone else in the testator's presence and at his direction sign the testator's name thereon.

(c) The testator must signify to the attesting witnesses that the instrument is his instrument by signing it in their presence or by acknowledging to them his signature previously affixed thereto, either of which may be done before the attesting witnesses separately.

(d) The attesting witnesses must sign the will in the presence of the testator but need not sign in the presence of each other.

N.C. Gen. Stat. § 31-3.3 (2005). As the statute indicates, proof of the proper execution of a will "ordinarily requires the testimony of two attesting witnesses." *In re Will of McCauley*, 356 N.C. 91, 95, 565 S.E.2d 88, 92 (2002).

Alternatively, an attested written will may be probated if it is "self-proving"—that is, if it includes proper affidavits from the attesting witnesses. N.C. Gen. Stat. § 31-18.1(a)(4) (2005); *Will of McCauley*, 356 N.C. at 95, 565 S.E.2d at 92. In order to make a will self-proving, there must be a notary's verification that (1) the testator signed the will in the notary's presence and declared it to be his or her last will and testament and (2) two persons witnessed the testator sign the will. *See* N.C. Gen. Stat. § 31-11.6 (2005) (providing the notarial forms necessary to simultaneously execute a will, attest it, and make it self-proving).

## Facts

The testator had four children: Mary Yelverton Moore, James C. Yelverton, Lillie Mae Simmons, and caveator. The testator also had a number of grandchildren, among them propounder, who is the son of Mary Yelverton Moore. Propounder lived with the testator and her husband for much of his childhood, until he joined the Marine Corps following graduation from high school. The testator's husband died in 1994. In 1999, caveator moved in with the testator, his mother, where he remained through her death in 2003.

The testator's will was executed on 5 February 1994 and purports on its face to meet the requirements for a valid self-proved will under N.C. Gen. Stat. §§ 31-11.6 and 31-18.1(a)(4). In addition to the testator's signature, three witnesses appear to have signed it: Roberta Moore, Franklin Greenfield, and Mary Yelverton Moore. Additionally, the four signatures appear to have been notarized on 5 February 1994 by Teri L. Hamilton.

The evidence at trial tended to show that Roberta Moore and Franklin Greenfield signed the will on 5 February 1994 at the

Hamilton Funeral Home in the presence of the testator and Teri Hamilton. Neither Franklin Greenfield nor Roberta Moore had ever met the testator before 5 February 1994. They happened to be present at the funeral home when witnesses were needed for the testator's will. Greenfield and Moore signed the will at the request of Hamilton, a notary working at the funeral home. Mary Yelverton Moore witnessed the will several days later at the Wayne Memorial Hospital in the presence of the testator, but not in the presence of Hamilton or any other notary.

The will provided that propounder would receive the testator's estate. Propounder presented the will to the clerk of court on 14 October 2003, following the death of the testator. On 16 December 2003, caveator—the testator's son and propounder's uncle—instituted a caveat proceeding seeking to invalidate the will. On 14 December 2004, a jury entered a verdict finding that the document purporting to be the testator's will was, in fact, her will and that the will had been properly executed. On 16 December 2004, the trial court entered a judgment probating the will.

The next day, 17 December 2004, the trial court entered an order finding that the testator's will had been probated in common form; that propounder, as executor, had advanced $17,482.16 of his own money to pay the debts and cost of administration of the estate; that the money advanced had become a lien on the assets of the estate; and that in order to preserve the real property of the testator, it would be necessary for the executor to pay the taxes due on the property and to insure the property. Based on these findings, the court concluded that "[i]t is in the best interest of the estate for Kelvin M. Artis, Executor, to take possession, custody and control over the real property owned by Mary M. Yelverton at the time of her death in order to preserve the property of the estate until the conclusion of the caveat proceeding." The court (1) ordered that propounder take possession of the testator's real property; (2) authorized him to rent the property in order to generate funds to pay taxes, insurance, and debts of the estate; and (3) ordered that caveator vacate the real property unless he executed a written lease agreement with propounder. Caveator was also ordered to refrain from removing any of the testator's personal property upon vacating the premises.

On 22 December 2004, caveator made a motion for judgment N.O.V. or, in the alternative, a new trial. The trial court denied this motion in an order entered 17 February 2005. Caveator filed a timely

appeal from the order of 17 December 2004 (case COA05-771) and a separate timely appeal from the judgment of 16 December 2004 and the order of 17 February 2005 (case COA05-772).

I

[1] We begin our discussion with caveator's appeal from the 17 December 2004 ruling that caveator could not retain possession of the testator's real property pending appeal of the caveat proceeding. Caveator claims that propounder was seeking to take possession of the property "not out of a desire to preserve the property (for who better than a relative who had been living there), but out of revenge for the filing of this caveat proceeding." Caveator further contends that the amount spent by the executor "far exceeds the amount necessary to preserve the property of the estate."

Caveator, however, cites no statutes, case law, or other authority in support of his arguments as to why the 17 December 2004 order was erroneous. We, therefore, deem his assignment of error in this case to be abandoned. N.C.R. App. P. 28(b)(6) ("Assignments of error . . . in support of which no reason or argument is stated or authority cited, will be taken as abandoned."). Caveator's appeal in case COA05-771 is dismissed.

II

[2] With respect to the judgment probating the will, caveator first argues that the trial court erred in denying his motion for summary judgment. Our Supreme Court has previously held:

The purpose of summary judgment is to bring litigation to an early decision on the merits without the delay and expense of a trial when no material facts are at issue. After there has been a trial, this purpose cannot be served. *Improper denial of a motion for summary judgment is not reversible error when the case has proceeded to trial and has been determined on the merits by the trier of the facts, either judge or jury.*

*Harris v. Walden*, 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985) (emphasis added) (internal citation omitted).

Under *Harris*, since the issues in this case were decided following a trial on the merits, the trial court's denial of summary judgment cannot constitute reversible error. We, therefore, overrule this assignment of error.

III

[3] Caveator next contends that the trial court erred in denying his motion for a continuance, made at the close of propounder's evidence, when one of his witnesses, the notary Teri Hamilton (now Teri Mickens), had at the last minute informed him she was unavailable to testify. Caveator contends that Ms. Mickens' testimony was critical to his case because, as her summary judgment affidavit stated, she would have denied having witnessed the signatures of Roberta Moore and Franklin Greenfield on 5 February 1994 despite the will's having indicated otherwise.

Denial of a motion for a continuance is reviewable on appeal only for abuse of discretion. *In re Will of Maynard,* 64 N.C. App. 211, 221, 307 S.E.2d 416, 424 (1983), *disc. review denied,* 310 N.C. 477, 312 S.E.2d 885 (1984). This Court has previously held that a trial court did not abuse its discretion in denying a defendant's motion for continuance when the motion was made after the case had already been called for trial and three of the defendant's witnesses were absent, but the defendant had not served the witnesses with enforceable subpoenas in order to ensure their presence at trial. *State v. Chambers,* 53 N.C. App. 358, 360, 280 S.E.2d 636, 638, *cert. denied,* 304 N.C. 197, 285 S.E.2d 103 (1981). *See also State v. Oden,* 44 N.C. App. 61, 62, 259 S.E.2d 795, 796 (1979) (trial court did not abuse its discretion in denying motion for continuance after trial had started, when defendant had not obtained subpoena for witness whose absence was the reason for the motion), *appeal dismissed and disc. review denied,* 299 N.C. 333, 265 S.E.2d 401 (1980).

Similarly, we conclude that the trial court in this case did not abuse its discretion. Caveator's motion for a continuance was made in the middle of the trial, after the case had been set peremptorily far ahead of time because propounder was stationed overseas. Caveator knew he could not compel Ms. Mickens to testify by service of a subpoena due to her relocation to Maryland. Nevertheless, he made no attempt to secure her testimony through a deposition *de bene esse.* *See* N.C.R. Evid. 804(b)(1) (providing that "[t]estimony given . . . in a deposition taken in compliance with law in the course of the same or another proceeding" is not excluded by the hearsay rule if the declarant is unavailable as a witness). In light of the hardship that would have resulted from a continuance, coupled with caveator's failure to exhaust reasonable methods of securing Ms. Mickens' testimony, we hold the trial court did not abuse its discretion in denying caveator's motion for a continuance.

**IN RE WILL OF YELVERTON**

[178 N.C. App. 267 (2006)]

IV

**[4]** The next issue raised by caveator on appeal also relates to Ms. Mickens. Caveator contends he should have been allowed to introduce into evidence (1) an order from the North Carolina Secretary of State regarding Ms. Mickens; and (2) testimony from caveator relating to this order.

The order—dated 18 November 2004, more than nine years after the execution of the testator's will—states that Ms. Mickens' notary commission was revoked effective immediately because "the Secretary of State has determined that Teri L. Mickens notarized a will without the person before her and notarized the signature of a witness that was not before her." Other than this statement, the order contains no dates or other information that would tend to identify the will that was the subject of the Secretary of State's investigation. In his offer of proof at trial, caveator's counsel stated that caveator "would have testified that he had [the notarization of his mother's will] investigated, and as a result of that investigation received a letter from the Secretary of State . . . revoking the notary [sic] of Terry [sic] Hamilton, now Mickens . . . ."

We hold that the trial court did not err in excluding the order and caveator's testimony because caveator failed to lay a proper foundation for the evidence's admission. Although the order references an instance where Ms. Mickens "notarized a will without the person before her" and possibly a separate instance where she "notarized the signature of a witness that was not before her," caveator has offered only his own testimony to tie this order to the will at issue in this case. N.C.R. Evid. 602, however, states that a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Caveator has made no showing that he has personal, non-hearsay knowledge such that he could testify that the order refers to his mother's will.

In sum, nothing on the face of the order indicates that the Secretary of State's order has anything at all to do with this case, and caveator's offer of proof does not establish that he could offer admissible testimony supplying the necessary connection. Without admissible evidence laying a foundation that the order related to the will in this case, caveator failed to demonstrate that the order was relevant. Accordingly, the trial court did not err in excluding the order and caveator's related testimony.

**IN RE WILL OF YELVERTON**

[178 N.C. App. 267 (2006)]

V

**[5]** Caveator also argues that the trial court improperly allowed propounder and his mother, Mary Yelverton Moore, to testify during trial about statements made to them by the testator. Caveator bases his argument solely on our State's Dead Man's Statute, codified as N.C.R. Evid. 601(c):

> (c) *Disqualification of interested persons.*—Upon the trial of an action, . . . a party or a person interested in the event . . . shall not be examined as a witness in his own behalf . . . concerning any oral communication between the witness and the deceased person . . . .

The Dead Man's Statute "is applicable only to oral communications between the party interested in the event and the deceased." *In re Will of Lamparter*, 348 N.C. 45, 49, 497 S.E.2d 692, 694 (1998). Generally speaking, both propounders and caveators are parties "interested in the event" within the meaning of the statute. *Id.*

A. Mary Yelverton Moore's Testimony

With respect to Mary Yelverton Moore, caveator challenges testimony of Moore describing a conversation with her mother, the testator, in which she asked Moore to witness her will at the Wayne Memorial Hospital "sometime in February 1994":

> A And [the testator] said that she wanted me to sign her will.
>
> . . . .
>
> A And I told her I couldn't because there was no notary there [at the hospital].
>
> . . . .
>
> A She said that she already had it notarized and had two witnesses' signatures on it, and there was a place for a third witness that she wanted me to sign.
>
> . . . .
>
> A And I read it and I saw that there was a seal on it, that there was two other witnesses' names on it. And I asked her who were the witnesses. She said she didn't know. She had it notarized at Hamilton's Funeral Home and the witnesses were there.
>
> . . . .

**IN RE WILL OF YELVERTON**

[178 N.C. App. 267 (2006)]

Q . . . Did you sign the will at this time?

A Yes, I did. She showed me where she signed it at.

Q She said that she had signed it?

A Yes.

Q And did you sign it in front of her?

A Yes.

Our Supreme Court has interpreted Rule 601(c) as follows:

> Although a "person interested in the event" of the action is disqualified, his interest must be a "direct legal or pecuniary interest" in the outcome of the litigation. "The key word in this phrase is 'legal,' the cases as a whole showing that the ultimate test is whether the *legal rights* of the witness will be affected one way or the other by the judgment in the case. The witness may have a very large pecuniary interest *in fact*—as the interest of a wife in an important law suit to which her husband is a party— and still be competent, while a comparatively slight *legal* interest will disqualify the witness."

*Rape v. Lyerly*, 287 N.C. 601, 622, 215 S.E.2d 737, 750 (1975) (quoting 1 Dale F. Stansbury, *Stansbury's North Carolina Evidence*, § 69, at 211 (Brandis rev. ed. 1973)). *See also In re Will of Hester*, 84 N.C. App. 585, 595-96, 353 S.E.2d 643, 650-51 (holding that testimony of will's executor was not barred by Dead Man's Statute even though executor served on board of deacons at church named as beneficiary of will), *rev'd on other grounds*, 320 N.C. 738, 360 S.E.2d 801 (1987). Our Supreme Court has stressed that "[t]he interest which determines the competency of a witness under the [Dead Man's S]tatute is a present direct pecuniary interest. . . . A mere sentimental interest or consideration or preference for one party as against the other, not based on some direct pecuniary interest of value, will not affect the question of the qualification of the witness." *Sanderson v. Paul*, 235 N.C. 56, 61, 69 S.E.2d 156, 160 (1952).

Caveator argues that the Dead Man's Statute bars Moore's testimony because Moore was "aligned" with propounder. At most, any such interest of Moore regarding the outcome of the litigation can be characterized only as "sentimental," since her son is above the age of majority. Indeed, Moore's testimony was actually against her pecuniary interest as she would share in the estate in the absence of the

will. Thus, we hold that because caveator has identified no direct legal or pecuniary interest of Ms. Moore, her testimony was not disqualified under Rule 601(c).

### B. Propounder's Testimony

Before trial, the trial court denied caveator's motion in limine requesting that the court exclude all evidence of oral communications between propounder and the testator. Propounder testified that after his grandmother handed him an envelope, "she told me what it was—because I wondered what she was giving me and she told me, and then I actually took them out and looked at them, and they were two wills." On appeal, caveator challenges the trial court's admission of this testimony.

After examining the record, we can see no reason why the trial court's admission of the challenged statement by propounder entitles caveator to a new trial. It is questionable whether propounder's assertion that his grandmother told him what was in the envelope, without any testimony as to what the testator actually said, violates Rule 601(c). *In re Will of Simmons*, 43 N.C. App. 123, 129, 258 S.E.2d 466, 470 (1979) (holding that the Dead Man's Statute does not operate to prevent "a witness from testifying as to the acts and conduct of the deceased where the witness is merely an observer and is testifying to facts based upon independent knowledge"), *disc. review denied*, 299 N.C. 121, 262 S.E.2d 9 (1980). Even assuming, however, that propounder's testimony was inadmissible, caveator has failed to demonstrate that any resulting error was prejudicial.

The caveat proceeding was instituted on the grounds that the will was improperly executed and/or the result of "undue and improper influence and duress." The challenged testimony by propounder does not appear to pertain directly to either ground. Moreover, as we have already discussed, Moore's testimony—that the testator characterized the document as her will—was properly admitted, and any similar statement by propounder would thus be merely duplicative. Caveator's assignment of error pertaining to his motion in limine is overruled.

VI

[6] In his next argument, caveator contends that the trial judge improperly displayed partiality by questioning two of the witnesses directly. We disagree.

The first witness was Franklin Greenfield, one of the signatories from the funeral home. The court's questioning of Mr. Greenfield took place after both parties stated they had nothing further to ask him. When the trial judge asked why Mr. Greenfield was at the funeral home on the day he signed the will, Mr. Greenfield stated that it was because a relative had died. The judge also verified that Mr. Greenfield remembered signing one or two documents, but that he did not know what he was signing or why he was signing it.

The second witness was John Keller, an attorney from Legal Aid who testified about Legal Aid's normal estate planning practices in response to evidence suggesting that Legal Aid may have prepared the testator's will. Mr. Keller testified on direct examination that his office had no record of having ever prepared a will for the testator. He then testified on cross-examination that the form language of the testator's will did resemble the language employed by Legal Aid. Once the parties had finished their questions, the trial judge questioned Mr. Keller further as to Legal Aid's client intake procedures and whether the jacket of the testator's will bore any indication that it had been prepared by Legal Aid.

As caveator concedes, "[a] trial judge has undoubted power to interrogate a witness for the purpose of clarifying matters material to the issues." *In re Will of Bartlett*, 235 N.C. 489, 493, 70 S.E.2d 482, 486 (1952). Whether a breach of the judge's impartiality has occurred is determined by "the probable effect on the jury of the improper comments and not the motive of the court in making such statements." *State v. Johnson*, 20 N.C. App. 699, 701, 202 S.E.2d 479, 481 (1974).

In this case, our review of the challenged exchanges between the judge and the two witnesses indicates that the judge's questions were neither biased towards one party nor were they geared towards eliciting particular answers from the witnesses. The probable effect that the exchanges had on the jury was clarification. Mr. Keller's testimony in response to the attorneys' direct and cross-examination may have been somewhat too technical for the jury, whereas Mr. Greenfield's initial testimony was somewhat unresponsive. We therefore hold that caveator is not entitled to a new trial on the basis of these exchanges.

VII

[7] Caveator next argues the trial court erred in denying his motion for a directed verdict at the close of propounder's evidence and

motion for judgment N.O.V. Caveator's arguments were not, however, properly preserved for appellate review. Although caveator moved for a directed verdict at the close of propounder's evidence, he did not renew his motion at the close of all the evidence and thus waived his directed verdict motion. *Woodard v. Marshall,* 14 N.C. App. 67, 68, 187 S.E.2d 430, 431 (1972) (noting that, by offering evidence, defendants waived their motion for directed verdict made at close of plaintiff's evidence).

Moreover, caveator's waiver of the motion for a directed verdict also precludes us from reviewing his motion for judgment N.O.V. *Jansen v. Collins,* 92 N.C. App. 516, 517, 374 S.E.2d 641, 643 (1988) ("A motion for directed verdict at the close of all evidence is an absolute prerequisite to the post verdict motion for judgment notwithstanding the verdict."); *cf.* N.C.R. Civ. P. 50(b)(1) (providing that a party who has unsuccessfully moved for a directed verdict may make a motion for judgment notwithstanding the verdict). These assignments of error are, therefore, overruled.

[8] Alternatively, caveator challenges the trial court's denial of his motion for a new trial, which was based on (1) insufficiency of the evidence; (2) violations of the Dead Man's Statute; (3) the judge's alleged failure to show impartiality; and (4) denial of caveator's motion for continuance. Since we have already addressed the second, third, and fourth grounds, we are left with only the first ground, namely, the insufficiency of the evidence. In a will caveat proceeding, the standard of review for the denial of a new trial motion based on insufficiency of the evidence is " 'simply whether the record affirmatively demonstrates an abuse of discretion by the trial court in doing so.' " *In re Will of McDonald,* 156 N.C. App. 220, 228, 577 S.E.2d 131, 137 (2003) (quoting *In re Will of Buck,* 350 N.C. 621, 629, 516 S.E.2d 858, 863 (1999)).

It is well-settled that "[i]n an ordinary case, due execution is proven by the testimony of the attesting witnesses or by a self-proved will pursuant to N.C.G.S. § 31-11.6." *Will of McCauley,* 356 N.C. at 95, 565 S.E.2d at 92 (internal citation omitted). Here, propounder offered both evidence of a self-proved will and evidence from attesting witnesses regarding the circumstances surrounding the execution and witnessing of the will. Based upon our review of the evidence, caveator has failed to show the trial court abused its discretion in determining not to grant a new trial due to insufficient evidence of either a self-proving will or attesting witnesses. *See,*

*e.g., Will of McDonald,* 156 N.C. App. at 232, 577 S.E.2d at 139 (holding that caveator, the non-movant, had presented "substantial evidence of the circumstances leading up to the execution of the will," and no abuse of discretion was evident in refusing to grant a new trial). Accordingly, we uphold the denial of caveator's motion for a new trial.

Case No. COA05-771—Dismissed.

Case No. COA05-772—No error in part; affirmed in part.

Judges HUDSON and TYSON concur.