GEMINI DRILLING AND FOUNDATION, LLC, PLAINTIFF v. NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, DEFENDANT

No. COA07-1266

(Filed 2 September 2008)

**1. Appeal and Error— appealability—interlocutory order— denial of motion to stay pending arbitration—waiver**

Although defendant surety contends the trial court erred in a subcontractor's breach of contract case arising from street construction by denying its motion to stay pending arbitration, the merits of this argument are not reached since defendant waived whatever right it had to arbitrate this dispute because, although defendant was not required to immediately appeal the trial court's order denying its motion to compel arbitration, its failure to so appeal or take exception to the order and then engaging in protracted litigation, including a full bench trial, prejudiced plaintiff.

**2. Highways and Streets— street construction—subcontractor's action against surety—denial of continuance—no right to conclude administrative procedures with DOT**

The trial court did not abuse its discretion in a subcontractor's breach of contract case arising from street construction by denying defendant surety's motion for continuance allegedly without recognizing defendant's right to conclude pending administrative procedures with DOT because: (1) the case had been pending on the docket for over two years, and defendant had substantial time to prepare and complete any necessary procedures in order to be prepared for trial; (2) defendant did not provide a valid reason to wait for DOT to complete its administrative pro-

cedures; and (3) although defendant cites *Nello L. Teer Co.*, 182 N.C. App. 300 (2007), it is inapplicable when DOT is not a party to this case, and therefore the requirement to complete all administrative remedies does not apply.

**3. Constitutional Law— right to fair trial—denial of motion for continuance—allegations of trial court's lack of decorum—refusal or rejection of exhibits**

Defendant surety was not denied an opportunity for a fair trial in a bench trial of a subcontractor's breach of contract case arising from street construction even though the trial court denied its request for a continuance, allegedly treated it with contempt and bias throughout the course of the trial, and rejected or refused to consider certain exhibits that defense counsel marked as exhibits but did not formally offer into evidence, and defendant is not entitled to a new trial, because: (1) the Court of Appeals already concluded the trial court's decision to deny the motion to continue was supported by reason and was the result of a competent inquiry, and thus it cannot constitute an irregularity that would allow defendant to receive a new trial; (2) the trial court's skepticism about contract trials affected both parties and his criticism, constructive and otherwise, was directed towards counsel for both parties; (3) it did not appear that the trial court harbored such a bias against the trial of civil contract actions that he could not render a proper judgment; (4) although a judge's comments can improperly influence a jury, less judicial restraint is required during a bench trial; and (5) defense counsel had ample opportunity to clarify and rectify the situation regarding the exhibits but failed to do so.

**4. Constitutional Law— right to fair trial—denial of motion for continuance—nonresident defense witness late and not allowed to testify**

Defendant surety was not denied an opportunity for a fair trial in a bench trial of a subcontractor's breach of contract case arising from street construction even though the trial court denied its motion for a continuance until the next morning to allow a nonresident defense witness construction superintendent who was late to testify because: (1) the trial court did not abuse its discretion when it had already indicated its desire to prevent any further delay by denying two pre-trial motions to continue; and (2) defense counsel explained the nonresident's testimony would consist of corroborating evidence as to the delays and the

effect that it had on the job, and counsel should have attempted to secure testimony through a deposition *de bene esse.*

**5. Trials— substitute judge—first judge retired—denial of motion for new trial—ministerial rather than judicial function**

A substitute second judge did not err in a breach of contract case arising from street construction by denying defendant's motion for a new trial based on lack of jurisdiction after the first judge had retired, and defendant is not entitled to a new trial, because: (1) *Hoots,* 282 N.C. 477 (1973), and *Graves,* 302 N.C. 332 (1981), provide an exception to the general application of N.C.G.S. § 8C-1, Rule 63 making it inappropriate for a superior court judge who did not try a case to rule upon a motion for a new trial, and in that situation, an appellate court should conduct the review of errors to determine if the party is entitled to a new trial; (2) the function of a substitute judge under this rule is ministerial rather than judicial; and (3) the circumstances and alleged irregularities of defendant's trial did not prevent it from having a fair trial.

Appeal by defendant from order entered 11 May 2005 by Judge John R. Jolly, Jr., judgment entered 21 November 2006 by Judge Narley L. Cashwell in Wake County Superior Court, and order entered 8 June 2007 by Judge Michael R. Morgan in Wake County Superior Court. Heard in the Court of Appeals 16 April 2008.

*William E. West, Jr., for plaintiff.*

*Smith, Currie & Hancock LLP, by Harry R. Bivens, for defendant.*

ELMORE, Judge.

I. Background

This appeal arises from a contract between Blythe Construction, Inc. (Blythe or BCI) and Gemini Drilling and Foundation, LLC (plaintiff). On or about 1 May 2002, Blythe contracted with the North Carolina Department of Transportation (DOT) to make improvements to South Wilmington Street in Raleigh (Wilmington Street Project) for the sum of $4,574,263.03. On or about 17 May 2002, Blythe also contracted with the City of Raleigh to make improvements to Duraleigh Road in Raleigh (Duraleigh Project) for

$4,574,263.03. National Fire Insurance of Hartford (defendant) provided the surety payment bonds for Blythe for each of the projects. On 7 May 2002, Blythe entered into a subcontract with plaintiff to perform drilled shaft work on the Duraleigh Project for the sum of $598,816.92. On 17 May 2002, Blythe entered into a subcontract with plaintiff to perform drilled shaft work on the Wilmington Street Project for the sum of $253,630.82.

Blythe terminated its Wilmington Street subcontract with plaintiff on 26 March 2004. This termination followed a series of letters from Blythe to plaintiff alleging that Blythe had incurred damages as result of defendant's "failure . . . to uphold the terms of the Subcontract Agreement." Although defendant had completed most or all of the work on the Duraleigh Road Project, Blythe notified defendant that it would "withhold any further payments for work completed to date *on any contract with Gemini* . . . ." (Emphasis in original.) Blythe explained that "[t]he cost incurred by Blythe will exceed any funds due to [defendant] under all contracts, for the impact of the actions and inactions of [defendant] on the S. Wilmington St. Bridge project." Blythe estimated that defendant's "total direct delay to Blythe's critical path on the" Wilmington Street Project was at least 108 days. Blythe estimated that the potential liquidated damages for the project were $1,000.00 per day, and that it had "suffered extended overhead cost" for the project of at least $126,360.00.

Plaintiff filed a complaint against defendant, Blythe's surety, on 17 June 2004. The complaint alleged that plaintiff had "duly performed all of its work under the Duraleigh Project and a substantial part of its work under the South Wilmington Street Project. Gemini was not able to complete its work on the South Wilmington Street Project because its subcontract was wrongfully terminated by Blythe." Plaintiff alleged that it had demanded payment from Blythe for its work on the two projects and that Blythe had refused to make payment in full. Plaintiff determined that Blythe owed it $322,000.00 plus interest. Plaintiff alleged that it was "an intended beneficiary of the payment bonds issued by National Fire Insurance for Blythe in connection with the Projects" and that "[p]ursuant to the terms of the bonds and of the North Carolina Model Payment and Performance Bond Act (G.S. 44A-25 through 44A-35), Gemini [was] entitled to recover the sums due it directly from National Fire Insurance as the surety for Blythe."

On 4 October 2004, defendant responded with a motion to stay the action pending arbitration in which it asked the trial court

to stay plaintiff's action and compel arbitration. The subcontract between Blythe and plaintiff contains an arbitration clause, which defendant characterized as "an agreement between BCI and Gemini to resolve all disputes arising thereunder by arbitration, if BCI elects this option."[1] Defendant reasoned that because it was entitled to every defense available to its principal, Blythe, it was entitled to elect arbitration.

Judge John R. Jolly, Jr., held a hearing on defendant's motion and issued an order denying the motion on 11 May 2005. The record on appeal does not include a transcript of the hearing, but Judge Jolly explained his ruling in nine findings and conclusions. He concluded "that the arbitration provisions in the subcontracts between BCI and Plaintiff lack mutuality and sufficient consideration, and are against public policy. They therefore are not enforceable against Plaintiff, and Defendant's Motion should be denied."

After one continuance, the action was scheduled for trial on 3 July 2006. Defendant filed a motion for continuance on 27 June 2006, which Judge Narley L. Cashwell denied. Both parties then filed a joint pre-trial motion for a continuance, which Judge Cashwell denied. Both parties also waived a jury trial and consented to a bench trial before Judge Cashwell. After the trial, Judge Cashwell asked the parties to submit proposed orders. Judge Cashwell held that plaintiff was entitled to recover $200,764.80 plus interest from defendant for work performed for Blythe on the Duraleigh Road Project and $95,440.82 plus interest for work performed under the South Wilmington Street Project. He held that defendant should not recover from plaintiff under "its claim for setoff for damages and delays allegedly incurred in connection with the South Wilmington Street Project . . . ." He awarded costs and attorneys' fees in the amount of $25,367.64 to plaintiff.

## II. Motion to Compel Arbitration

**[1]** Defendant first argues that the trial court erred by denying its motion to stay pending arbitration. We do not reach the merits of

---

1. The arbitration clause states, in relevant part: "Any claim, dispute or other matter in question solely between BCI and Subcontractor relating to this Agreement shall be subject to arbitration at the sole option and discretion of BCI. Arbitration shall commence upon the written demand of BCI and served upon Subcontractor by a manner chosen by BCI. Any legal proceeding previously instituted which otherwise would determine a fact or issue of the claim, dispute or other matter to be arbitrated shall be promptly stayed pending completion of the arbitration proceeding. Such arbitration shall be in accordance with the construction industry arbitration rules of the North Carolina Arbitration Code . . . ."

defendant's argument because we find that defendant waived whatever right it had to arbitrate this dispute. Defendant moved to stay pending arbitration on 4 October 2004, which motion Judge Jolly denied on 11 May 2005. Although an order denying a motion to stay pending arbitration is interlocutory, it is immediately appealable under N.C. Gen. Stat. § 1-277(a) because it affects a substantial right. N.C. Gen. Stat. § 1-277(a) (2007); *Edwards v. Taylor*, 182 N.C. App. 722, 724, 643 S.E.2d 51, 53 (2007). Moreover, both the North Carolina Uniform Arbitration Act (NCUAA) and the Federal Arbitration Act (FAA) specifically permit a party to immediately appeal an order denying a motion to compel arbitration. *See* N.C. Gen. Stat. § 1-567.18(a)(1) (2001) (repealed effective 1 January 2004) ("An appeal may be taken from . . . [a]n order denying an application to compel arbitration . . . ."); 9 U.S.C. § 16(a)(1)(B) (2008) ("An appeal may be taken from . . . an order . . . denying a petition under section 4 of this title [9 USCS § 4] to order arbitration to proceed . . . ."). However, "[t]he language of N.C.G.S. § 1-277 is permissive not mandatory. Thus, where a party is entitled to an interlocutory appeal based on a substantial right, that party may appeal but is not required to do so." *Dep't of Transp. v. Rowe*, 351 N.C. 172, 176, 521 S.E.2d 707, 710 (1999). Similarly, the language of N.C. Gen. Stat. § 1-567.18(a)(1)[2] and 9 U.S.C. § 16(a)(1)(B) is also permissive, not mandatory. Accordingly, defendant was not required to immediately appeal Judge Jolly's order denying its motion to compel arbitration.

Nevertheless, by failing to so appeal or take exception to the order and then engaging in protracted litigation, including a full bench trial, defendant prejudiced plaintiff and waived its right to arbitrate. "Waiver of a contractual right to arbitration is a question of fact." *Cyclone Roofing Co. v. LaFave Co.*, 312 N.C. 224, 229, 321 S.E.2d 872, 876 (1984) (citations omitted). North Carolina public policy strongly favors arbitration and we will only "hold that a party has impliedly waived its contractual right to arbitration if by its delay or by actions it takes which are inconsistent with arbitration, another party to the contract is prejudiced by the order compelling arbitration." *Id.* (citations omitted). "[W]aiver . . . may not rest mechanically on some act such as the filing of a complaint or answer but must find a basis in prejudice to the objecting party[.]" *Id.* (quoting *Carolina Throwing Co. v. S & E Novelty Corp.*, 442 F.2d 329, 331

---

2. The NCUAA was repealed effective 1 January 2004 and replaced with the Revised Uniform Arbitration Act (RUAA). The RUAA contains a provision that is substantively identical to section 567.18 in the NCUAA. Compare N.C. Gen. Stat. § 1-567.18 (2001) and N.C. Gen. Stat. § 1-569.28 (2005).

(4th Cir. 1971)) (additional citation omitted). Our Supreme Court has explained that

> [a] party may be prejudiced if, for example, it is forced to bear the expenses of a lengthy trial; evidence helpful to a party is lost because of delay in seeking of arbitration; a party's opponent takes advantage of judicial discovery procedures not available in arbitration; or, by reason of delay, a party has taken steps in litigation to its detriment or expended significant amounts of money thereupon.

*Id.* at 229-30, 321 S.E.2d at 876-77 (citations omitted).

Here, after Judge Jolly denied defendant's motion to compel arbitration, defendant actively litigated this dispute by seeking multiple extensions, engaging in discovery, and participating in a full bench trial. Plaintiff has been prejudiced by defendant's conduct: Plaintiff engaged in a trial that, although it occurred in a single day, was long enough to produce a 189-page transcript, twenty-seven exhibits, and five witnesses. Defendant delayed this trial through its requests for extensions, and the trial concluded fourteen months after Judge Jolly's denial of the motion to compel arbitration and twenty-three months after plaintiff filed its initial claim. Now, three years have passed since Judge Jolly entered his order and four since plaintiff filed this suit. We caution that "[t]he waiver determination is fact-specific and these illustrations are not intended to be predictive or exhaustive." *Cotton v. Slone*, 4 F.3d 176, 180 (2d Cir. 1993). The determination arose from defendant's conduct and plaintiff's resulting prejudice, not merely from defendant's failure to immediately appeal Judge Jolly's order.

Our result is consistent with the legislative intent behind both the FAA and the NCUAA. The U.S. Court of Appeals for the Second Circuit observed that

> Section 16(a) [of the FAA] is designed to streamline the appellate aspect of the litigation process so that parties may realize their arbitration rights at the earliest possible moment. . . . The aims of section 16(a) would be defeated if a party could reserve its right to appeal an interlocutory order denying arbitration, allow the substantive lawsuit to run its course (which could take years), and then, if dissatisfied with the result, seek to enforce the right to arbitration on appeal from the final judgment.

*Id.* Our Supreme Court has stated that "the principle [*sic*] legislative purpose behind enactment of the Uniform Arbitration Act [is] to provide and encourage an expedited, efficient, relatively uncomplicated, alternative means of dispute resolution, with limited judicial intervention or participation, and without the primary expense of litigation—attorneys' fees." *Nucor Corp. v. General Bearing Corp.*, 333 N.C. 148, 154, 423 S.E.2d 747, 750 (1992) (citations omitted). Indeed, "[t]he purpose of arbitration is to reach a final settlement of disputed matters without litigation . . . ." *J. M. Owen Bldg. Contractors v. College Walk, Ltd.*, 101 N.C. App. 483, 487, 400 S.E.2d 468, 470 (1991) (quotations and citation omitted). N.C. Gen. Stat. § 1-567.18, like 9 U.S.C. § 16(a), encourages such expedited and efficient dispute resolution, while "not much can be said for allowing the party who sought arbitration to litigate and later seek arbitration on appeal if the trial goes badly instead of appealing immediately . . . ." *Colon v. R.K. Grace & Co.*, 358 F.3d 1, 4 (1st Cir. 2003). Accordingly, we overrule defendant's first assignment of error.

III. Motion for Continuance

**[2]** Defendant next argues that the trial court erred by denying defendant's motion for continuance without recognizing defendant's right to conclude pending administrative procedures with DOT. Defendant contends that the trial judge should have stayed the proceedings until after the administrative procedures were completed. We review the trial judge's denial of defendant's motion for continuance for abuse of discretion. *State v. Jones*, 172 N.C. App. 308, 311-12, 616 S.E.2d 15, 18 (2005). We find no abuse of discretion.

An abuse of discretion is found only when "the trial court's decision was 'unsupported by reason and could not have been the result of competent inquiry.' " *McIntosh v. McIntosh*, 184 N.C. App. 697, 702, 646 S.E.2d 820, 823 (2007) (quoting *Wiencek-Adams v. Adams*, 331 N.C. 688, 691, 417 S.E.2d 449, 451 (1992)). Here, the trial judge's decision to deny defendant's motion for continuance was supported by reason because this case had been pending on the docket for over two years. Defendant had substantial time to prepare and complete any necessary procedures in order to be prepared for trial. In addition, defendant did not provide a valid reason to wait for DOT to complete its administrative procedures.

Defendant also cites *Nello L. Teer Co. v. Jones Bros., Inc.*, to support its contention that the requested continuance should have been granted because administrative procedures with DOT had not been

completed. 182 N.C. App. 300, 641 S.E.2d 832 (2007). In *Teer*, we explained that "before a party may pursue a judicial action against the state for money claimed to be due under a highway construction contract, it must first pursue its administrative remedies." *Id.* at 305, 641 S.E.2d at 836 (quotations and citations omitted). However, we were referring in that case to actions against DOT for payment under highway constructions contracts. *Id.* at 305, 641 S.E.2d at 836. *Teer* is not applicable here because DOT is not a party to this case, and therefore the requirement to complete all administrative remedies does not apply. The trial court correctly concluded that there was no reason to continue the trial to wait for DOT to complete administrative proceedings because those proceedings were not necessary for the trial. Accordingly, we hold that the trial court's decision was supported by reason and was the result of a competent inquiry.

### IV. Opportunity for a Fair Trial

**[3]** Defendant next argues that it did not receive an opportunity for a fair trial because the trial judge denied its request for a continuance and treated it with contempt and bias throughout the course of the trial. Defendant points to Rule 59(a)(1) of our Rules of Civil Procedure, which states that "[a] new trial may be granted to all or any of the parties and on all or part of the issues for . . . [a]ny irregularity by which any party was prevented from having a fair trial . . . ." N.C. Gen. Stat. § 1A-1, Rule 59(a)(1) (2007). Defendant contends that the trial judge's disposition and remarks to defense counsel, and the denial of defendant's motions throughout the trial, constitute irregularities that should allow defendant to receive a new trial.

### A. Motion to Continue

"[A] motion to continue is addressed to the discretion of the trial court . . . ." *Jones*, 172 N.C. App. at 311-12, 616 S.E.2d at 18 (quotations and citations omitted). We have already established that the trial court's decision was not unsupported by reason and was the result of a competent inquiry. Therefore, because the trial court's decision not to grant a continuance is not an abuse of discretion, it cannot constitute an irregularity that would allow defendant to receive a new trial.

### B. Conduct of the Trial Judge

Defendant asserts that Judge Cashwell's "lack of decorum" deprived defendant of a fair trial. Defendant characterizes Judge Cashwell's comments as "inexplicably hostile," and admittedly, the

comments were not all kind. For example, Judge Cashwell told both attorneys, "Just as an observation, neither one of your [sic] gentlemen do a whole lot of trial work, do you?" At the beginning of the trial, Judge Cashwell declared, "In the 16 years I have been a Superior Court judge and the five years I was a District Court judge, I have never, to this day, understood why contract cases ever go to trial." Comments in this vein continued throughout the trial until closing arguments, at which point Judge Cashwell opined:

> Of course, my observation is that in all the cases involving contracts and business, they're all subject to being looked at as a heck of a way to run a railroad. I find it absolutely—lots of things I find absolutely astounding in so-called, quote, "business situations." But that's okay.

> Go ahead and finish your argument, and then Mr. Bivens can be heard, and then you can be heard again, and then he can be heard. Each of you can be heard ad nauseam, as long as you want to.

We note first that Judge Cashwell's skepticism about contract trials affected both parties, and that his criticism—constructive and otherwise—was directed towards counsel for both parties. It does not appear to us that Judge Cashwell harbored such "a bias against the trial of civil contract actions" that he could not render a proper judgment.

Moreover, defendant only cites cases in which a judge's impropriety improperly influenced juries. Our Supreme Court has held that "jurors entertain great respect for [a judge's] opinion, and are easily influenced by any suggestion coming from him. As a consequence, he must abstain from conduct or language which tends to discredit or prejudice any litigant in his courtroom." *McNeill v. Durham County ABC Bd.*, 322 N.C. 425, 429, 368 S.E.2d 619, 622 (1988) (quotations and citation omitted; alteration in original). Here, however, both parties agreed to a bench trial. Although a judge's comments can improperly influence a jury, less judicial restraint is required during a bench trial. In such a case,

> the ordinary rules as to the competency of evidence applied in a trial before a jury are to some extent relaxed, for the reason that the judge with knowledge of the law is able to eliminate from the testimony he hears that which is immaterial and incompetent, and consider only that which tends properly to prove the facts to be found.

*Munchak Corp. v. Caldwell*, 301 N.C. 689, 694, 273 S.E.2d 281, 285 (1981) (quotations and citation omitted). We do not believe that any of Judge Cashwell's comments were inappropriate enough to constitute irregularities that would necessitate a new trial.

### C. Exclusion of Exhibits Not Offered into Evidence

Defendant next argues that the trial court erred by rejecting and refusing to consider certain exhibits that defense counsel had marked as exhibits but did not formally offer into evidence. Before closing arguments, Judge Cashwell stated, "All the evidence has now been presented. Anything which was marked but not offered into evidence is not in evidence in this particular case." During the trial, defendant marked twenty-seven exhibits, but only formally offered into evidence five of them. In his order, Judge Cashwell found as fact that although defense counsel "moved the Court to mark certain documents as exhibits and such motions were granted, none of Defendant's marked exhibits were offered by counsel for Defendant and admitted into evidence by the Court except" exhibits 1, 2, 3, 4, and 5.

Defendant claims that defense counsel used the same language to enter into evidence the five admitted exhibits as he did eleven of the non-admitted exhibits, but, "without Trial Counsel's notice, the Court's manner of reply changed, effectively denying admission even though the gist of the Court's response suggested that the documents were entered *as evidence*." (Emphasis in original.) Defendant argues that it made no effort to correct this situation before the end of the trial because

> [t]he Court's change in posture and response was not evident until the Honorable Judge made a comment literally as he left the bench regarding documents not offered into evidence. Given the Court's general attitude towards the litigants, as discussed above, this remark and conduct appears to be an attempt to further demean Counsel for appearing. At any rate, the Judge's immediate withdrawal from the court room following his remark left Counsel no opportunity to inquire or object to the court's statement. The Court's modification of its response to Trial Counsel's request was an unfair surprise which prevented Defendant from receiving a fair trial.

The comment in question, recited above, was not made literally as Judge Cashwell left the bench. It was made before closing statements

and before the parties discussed attorneys' fees. Both attorneys conversed with Judge Cashwell before he closed court and Judge Cashwell specifically asked defense counsel if there was "[a]nything else" that he wanted the court to consider. Defense counsel had ample opportunity to clarify and rectify the situation.

### D. Exclusion of Witness

**[4]** Defendant next argues that the trial court erred by refusing to grant a continuance until the next morning to allow a defense witness who was late to testify. Clive Roberson, a construction superintendent who had firsthand knowledge of plaintiff's performance, agreed to testify at the trial on behalf of defendant. Roberson went on vacation over the Fourth of July weekend and defendant could not reach Roberson "until early on the morning of trial." According to defendant's brief, "Mr. Roberson immediately left his home in South Carolina and proceeded towards Raleigh. He estimated and notified defense Counsel that he would be available at approximately 5:00 on the afternoon of July 5, 2006." After defendant had called its last available witness, defense counsel asked the trial court to adjourn until Roberson could arrive. The trial court asked whether Roberson had been subpoenaed and defense counsel replied, "He is not subject to subpoena. He is outside the state of North Carolina. He has—he has agreed to attend." Judge Cashwell denied defendant's motion, stating, "Your request that court adjourn so that your witness may be in court when he should have been in court this morning at 9:30 is denied. You may call your next witness or rest your case, sir."

Defendant argues that the trial court denied it the opportunity to present a material witness and the trial court's failure "to accommodate a witness who was making all reasonable efforts to attend the trial [was] an unnecessary abuse of discretion and an irregularity which, pursuant to Rule 59(a)(1), prevented Defendant NFIC from having a fair trial." "Denial of a motion for a continuance is reviewable on appeal only for abuse of discretion." *In re Will of Yelverton,* 178 N.C. App. 267, 274, 631 S.E.2d 180, 184 (2006) (citations omitted). We find no abuse of discretion. Judge Cashwell had already indicated his desire to prevent any further delay by denying two pre-trial motions to continue. Furthermore, defense counsel had explained that Roberson's testimony would consist of "corroborating evidence as to the delays and the effect that had on that job . . . ." We have also suggested that in a situation such as this, counsel should attempt to secure testimony through a deposition *de bene esse. Id.; see also* N.C. Gen. Stat. § 8-83(2) (2007) ("Every deposition taken and returned in

the manner provided by law may be read on the trial of the action or proceeding . . . [i]f the witness is a resident of . . . another state, and is not present at the trial.").

## V. Motion for a New Trial

[5] Defendant argues that Judge Michael R. Morgan erred by denying its motion for a new trial on the basis of lack of jurisdiction and asks us to grant it a new trial. We find no error and decline to grant defendant's request for a new trial. Judge Cashwell entered his order on 21 November 2006. Defendant moved for a new trial on 1 December 2006. Judge Cashwell retired in December 2006. Defendant's motion was calendared for 16 April 2007 and heard by Judge Morgan. Judge Morgan denied defendant's motion, explaining in his written order that, "without review or consideration of the merits," he had "considered solely the jurisdictional arguments of counsel and the briefs tendered by the parties as they address the court's jurisdiction of this matter." Judge Morgan concluded that because Judge Cashwell was no longer available, it would not be appropriate for another superior court judge to hear defendant's motion. Judge Morgan decreed in the order that the

> order [was] entered anticipating Defendant's right to assert on appeal, and without prejudice thereto, and to receive a de novo review on any of the grounds for an award of a new trial which it properly could have asserted before the trial judge pursuant to the provisions of Rule 59 of the North Carolina Rules of Civil Procedure.

Judge Morgan based his decision on our Supreme Court's decisions in *Hoots v. Calaway*, 282 N.C. 477, 193 S.E.2d 709 (1973), and *Graves v. Walston*, 302 N.C. 332, 275 S.E.2d 485 (1981).

In *Hoots*, the trial court improperly failed to rule on the defendant's motion for a new trial, explaining that because it granted the defendant's motion for judgment notwithstanding the verdict, it was unnecessary to rule on the defendant's alternative motion for a new trial. *Hoots*, 282 N.C. at 489, 193 S.E.2d at 716-17. Our Supreme Court disagreed, but noted that "the judge who conducted the trial of this case [was] no longer the presiding judge of the Twenty-first Judicial District." *Id.* at 490, 193 S.E.2d at 717. The Court "deem[ed] it inappropriate for a superior court judge who did not try the case to pass now upon defendant's alternative motion for a new trial." *Id.* The Court offered the following solution:

[J]ustice requires that defendant be afforded an opportunity to have considered on appeal any asserted errors of law which he contends entitles him to a new trial. Accordingly, the judgment of the Court of Appeals . . . is affirmed with direction that upon the entry of such judgment defendant be permitted, if so advised, to except thereto and appeal therefrom and upon appeal obtain a review of the errors for which he asserts he is entitled to a new trial.

*Id.*

In *Graves*, our Supreme Court was again presented with a case in which a trial court ruled on a motion for judgment notwithstanding the verdict, but failed to rule on the accompanying alternative motion for a new trial as provided in Rule 50. *Graves*, 302 N.C. at 339, 275 S.E.2d at 489. In *Graves*, the Supreme Court held that the trial court had improperly granted the plaintiff's motion for judgment notwithstanding the verdict, and this Court had improperly affirmed. *Id.* at 338-39, 275 S.E.2d at 489-90 (citing *Hoots*). The Supreme Court noted that the judge who tried the case was no longer on the bench, and, citing *Hoots*, concluded that "[i]t would be inappropriate for another superior court judge who did not try the case to now pass upon plaintiffs' alternative motion for a new trial." *Id.* at 340, 275 S.E.2d at 489. The Court then "reviewed the record and [found] error of law prejudicial to plaintiffs," and remanded the case to the trial court for a new trial. *Id.*

Defendant argues that Rule 63 of our Rules of Civil Procedure governs the situation at hand, not *Hoots* and *Graves*. Rule 63 provides, in relevant part, that

[i]f by reason of . . . retirement . . . a judge before whom an action has been tried or a hearing has been held is unable to perform the duties to be performed by the court under these rules after a verdict is returned or a trial or hearing is otherwise concluded, then those duties, including entry of judgment, may be performed:

(1) In actions in the superior court by the judge senior in point of continuous service on the superior court regularly holding the courts of the district. If this judge is under a disability, then the resident judge of the district senior in point of service on the superior court may perform these duties. If a resident judge, while holding court in the judge's own

district suffers disability and there is no other resident judge of the district, such duties may be performed by a judge of the superior court designated by the Chief Justice of the Supreme Court.

\* \* \*

If the substituted judge is satisfied that he or she cannot perform those duties because the judge did not preside at the trial or hearing or for any other reason, the judge *may, in the judge's discretion*, grant a new trial or hearing.

N.C. Gen. Stat. § 1A-1, Rule 63 (2007) (emphasis added).

Defendant argues that "when Judge Morgan found that he could not perform the duty of hearing and deciding Defendant's Motion for New Trial, an appropriate course of conduct would have been an order granting a new trial without ruling on the merits." Without considering *Hoots* and *Graves*, defendant is correct that one proper course of conduct would have been to grant a new trial. Our Supreme Court has noted that "[i]n general, the application of Rule 63 presents the 'substituted judge' with two options in how to proceed. The judge could choose to honor" the original judge's decision in the matter or could grant a new trial or hearing. *Lange v. Lange*, 357 N.C. 645, 648, 588 S.E.2d 877, 879 (2003). *Hoots* and *Graves* provide an exception to this "general" application of Rule 63: it is not appropriate for a superior court judge who did not try a case to rule upon a motion for a new trial, and in that situation, an appellate court should conduct the review of errors to determine if the party is entitled to a new trial. This reconciliation of Rule 63 with *Hoots* and *Graves* is consistent with our previous holding that "[t]he function of a substitute judge under this rule is ministerial rather than judicial." *In re Savage*, 163 N.C. App. 195, 197, 592 S.E.2d 610, 611 (2004) (quotations and citation omitted). Morever, the Supreme Court has not overruled or taken exception to the rule in *Hoots* or *Graves*, and thus we, like Judge Morgan, are bound by it.

We review defendant's motion for a new trial as contemplated by *Hoots* and *Graves*, and, for the reasons articulated in the preceding pages, deny it. The circumstances and "irregularities" of defendant's trial did not prevent it from having a fair trial.

Accordingly, for the reasons stated above, we affirm the orders and judgments of the trial court, and deny defendant's motion for a new trial.

**LAUREL VALLEY WATCH, INC. v. MOUNTAIN ENTERS. OF WOLF RIDGE, LLC**

[192 N.C. App. 391 (2008)]

Affirmed.

Judges McGEE and JACKSON concur.