678 S.E.2d 773 (2009)
Chanda A. GRIESSEL, M.D., Plaintiff,
v.
TEMAS EYE CENTER, P.C. and Gregory P. Temas, M.D., Defendants.
No. COA08-1139.
Court of Appeals of North Carolina.
July 7, 2009.
*774 Nelson Mullins Riley & Scarborough, L.L.P., by Mark A. Stafford and Candace S. Friel, Winston-Salem, for plaintiff.
Douglas S. Harris, Greensboro, for defendants.
ELMORE, Judge.
Chanda A. Griessel, M.D. (plaintiff), sued Temas Eye Center, P.C. (TEC), and Gregory P. Temas, M.D. (together, defendants), for fraud, breach of contract, quantum meruit, violation of the North Carolina Wage and Hour Act, and declaratory judgment. Defendants filed motions to dismiss pursuant to Rule 12(b)(6), to stay the action and refer to arbitration, and "to return records and confidential material." The trial court denied all three motions by order filed 3 June 2008. Defendants now appeal.
Plaintiff is a licensed ophthalmologist who was recruited by defendants to work at TEC during the summer of 2006. According to plaintiff's complaint, defendants made numerous oral and written representations to her in their attempt to obtain her services. These representations included a $125,000.00 annual base salary, a $30,000.00 signing bonus, and bonuses based upon "a percentage of her actual production and collections exceeding her annual base salary[.]" On 24 July 2006, plaintiff entered into an employment *775 contract with defendants. According to the complaint,
During 2007, Dr. Griessel became aware that, in her professional opinion, Defendant TEC, as described more particularly herein, was improperly billing and submitting claims to patients and third-party payors for services provided by Dr. Griessel, Dr. Temas, and TEC; that Defendant TEC was billing third-party payors including Medicare under Dr. Temas' own provider number for services provided by Dr. Griessel; that Defendant TEC was collecting and retaining amounts in excess of that to which it was entitled for services rendered; and that Defendants were using improper accounting methods for their wrongful benefit and unjust enrichment, including without limitation, crediting Dr. Temas for procedures performed by Dr. Griessel in a manner that reduced the apparent amount of actual collections credited by Dr. Griessel under her "incentive salary" bonus agreement with Defendant TEC.
Defendant tendered a notice of resignation on 1 October 2007 and ceased providing services to TEC on 1 December 2007. According to the complaint, after 1 December 2007, defendants told inquiring patients and referral sources that plaintiff had simply "failed to show up to work" and that they did not have her contact information.
We first consider defendants' arguments that the trial court erred by denying their motions to dismiss and their motion to compel plaintiff to return documents to defendants. We do not reach the merits of these appeals because they are interlocutory and not properly before us. "Typically, the denial of a motion to dismiss is not immediately appealable to this Court because it is interlocutory in nature." Reid v. Cole, 187 N.C.App. 261, 263, 652 S.E.2d 718, 719 (2007) (quotations and citation omitted). In the absence of any final judgment, we may hear an interlocutory appeal if the order affects a substantial right. Id. at 263, 652 S.E.2d at 719-20. However, "the party seeking review of the interlocutory order still must show that it affects a substantial right[.]" Id. at 263, 652 S.E.2d at 719. "It is the appellant's burden to present appropriate grounds for this Court's acceptance of an interlocutory appeal ... and not the duty of this Court to construct arguments for or find support for appellant's right to appeal[.]" Slaughter v. Swicegood, 162 N.C.App. 457, 463, 591 S.E.2d 577, 581 (2004) (quotations and citations omitted). Although defendants admit that the order is interlocutory, they do not argue that it affects a substantial right. Though we need not extend ourselves this far, it is not apparent to us that the trial court's denial of defendants' 12(b)(6) motion affects a substantial right. Accordingly, we dismiss that portion of defendants' appeal as interlocutory.
For similar reasons, we dismiss defendants' appeal from the trial court's denial of the motion to compel plaintiff to return records and confidential material. Defendants have not argued that the order denying this motion affects a substantial right and none is apparent to us.
We next reach defendants' contention that the trial court improperly denied their motion to compel arbitration. The employment contract between plaintiff and defendants contains an arbitration clause. The clause states, in relevant part:
Upon written demand of either party, any controversy or claim arising out of, in connection with, or related to this Agreement or breach thereof ... shall be settled by arbitration.... The North Carolina Uniform Arbitration Act, as contained in Chapter 1, Article 45A, as amended of [sic] the North Carolina General Statutes, shall apply to this agreement to arbitrate.
Defendants argue that the trial court should have stayed the court proceedings and compelled arbitration based upon this clause.
We note first that "[a]lthough an order denying a motion to stay pending arbitration is interlocutory, it is immediately appealable under N.C. Gen.Stat. § 1-277(a) because it affects a substantial right." Gemini Drilling & Found., LLC v. Nat'l Fire Ins. Co., ___ N.C.App. ___, ___, 665 S.E.2d 505, 508 (2008) (citations omitted).
We also address another preliminary matter: Whether the employment contract is *776 governed by the North Carolina Uniform Arbitration Act (NCUAA), as specified in the contract, or by the Revised Uniform Arbitration Act (RUAA), which was in effect at the time the contract was executed.[1] The NCUAA was repealed effective 1 January 2004 and replaced by the RUAA. The contract in question was entered into on 24 July 2006, more than two years after the NCUAA was repealed and replaced by the RUAA. The RUAA specifies that a party to an agreement to arbitrate may waive or alter the RUAA's requirements as provided by law, but excepts certain provisions from waiver. N.C. Gen.Stat. § 1-569.4(a) (2007). Section 1-569.4(c) states, in relevant part:
A party to an agreement to arbitrate ... may not waive, or the parties shall not vary the effect of, the requirements of this section or G.S. 1-569.3(a), 1-569.7.... Any waiver contrary to this section shall not be effective but shall not have the effect of voiding the agreement to arbitrate.
N.C. Gen.Stat. § 1-569.4(c) (2007). Sub-section (c) disallows parties to a contract from waiving or varying the effect of § 1-569.3(a), which states that the RUAA "governs an agreement to arbitrate made on or after January 1, 2004." N.C. Gen.Stat. § 1-569.3(a) (2007). Although the arbitration clause in plaintiff's employment contract does not specify waiver of the RUAA, it does seek to have a different statutory schemethe NCUAAapply. Such a variance is not permitted under the RUAA because the employment contract was entered into after 1 January 2004. Accordingly, the RUAA applies, not the NCUAA.
We now reach the merits of defendants' argument: (1) that the trial court should have granted defendants' motion to compel arbitration based upon North Carolina's strong public policy favoring arbitration, and (2) that it was reversible error for the trial court to deny defendants' motion to compel arbitration without making findings of fact.
Section 1-569.7, the requirements of which a party also may not waive pursuant to § 1-569.4(c), states:
(a) On motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement:
* * *
(2) If the refusing party opposes the motion, the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate.
N.C. Gen.Stat. § 1-569.7(a) (2007) (emphasis added). This section replaced the following, less concise section of the NCUAA:
(a) On application of a party showing an agreement described in G.S. 1-567.2; and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.
N.C. Gen.Stat. § 1-567.3(a) (2001) (repealed effective 1 January 2004).
Our courts have consistently interpreted § 1-567.3(a) to require that, if a trial court denies a motion to compel arbitration, it must make "findings regarding the existence of an arbitration agreement between the parties"; failure to make such a finding is reversible error. Steffes v. DeLapp, 177 N.C.App. 802, 804, 629 S.E.2d 892, 894 (2006) (citing Barnhouse v. American Express Fin. Advisors, Inc., 151 N.C.App. 507, 509, 566 S.E.2d 130, 132 (2002)); see also Ellis-Don Constr., Inc. v. HNTB Corp., 169 N.C.App. 630, 633-34, 610 S.E.2d 293, 296 (2005). In Steffes, we explained that when an order does not "state the grounds for the trial court's denial of [the] defendant's motion to stay and compel arbitration[,] and contain[s] no findings of fact, the appellate court cannot conduct a meaningful review of the conclusions of law and test the correctness of [the lower court's] *777 judgment." Id. (quotations and citations omitted). However, the reasoning in Barnhouse, Ellis-Don, and Steffes all stemmed from NCUAA § 1-567.3(a); the case at hand is the first to consider the parallelthough not identicalRUAA section, § 1-569.7(a). We identified the following logical quandary in Barnhouse, and later repeated it in Ellis-Don and Steffes:
Although it is possible to infer from the order denying defendants' motion that the trial court found that no arbitration agreement existed, other possibilities are equally likely. For instance, the trial court might have concluded that an arbitration agreement existed, but that the doctrine of equitable estoppel precluded enforcement of the agreement. It is also possible that the trial court made no determination on the validity of the agreement, but denied the motion on procedural grounds, for example.
Barnhouse, 151 N.C.App. at 509, 566 S.E.2d at 132 (emphasis added); see also Ellis-Don, 169 N.C.App. at 635, 610 S.E.2d at 296; Steffes, 177 N.C.App. at 805, 629 S.E.2d at 894. Under the NCUAA, trial courts had to specifically find that no arbitration agreement existed when denying a motion to compel arbitration because other possible reasons for the trial court's denial were as likely as the trial court finding that no arbitration agreement existed. The RUAA, however, eliminates that ambiguity. The wording of § 1-569.7(a) forecloses every possible reason for a trial court's denial of a motion to compel arbitration except that the trial court found no valid arbitration agreement. Section 1-569.7(a)'s use of the word "unless" limits the universe of possible reasons underlying a denial to one: The trial court found that there was no enforceable agreement to arbitrate. Thus, if a trial court denies the motion to compel arbitration, the only logical reason for that denial is that there was no enforceable agreement to arbitrate. The contrapositive, of course, is also true: If there is an enforceable agreement, then the trial court must order arbitration.
Here, the trial court denied defendants' motion to compel arbitration without making any findings of fact. However, no findings were necessary because the only reason that the trial court could have denied defendants' motion was that there was no enforceable agreement to arbitrate. Accordingly, defendants' arguments lack merit; the trial court properly considered whether an enforceable agreement to arbitrate existed and, finding no such agreement, denied defendants' motion without further explanation. As to defendants' public policy argument that North Carolina's public policy favors arbitrationsuch public policy does not create an arbitration clause where none otherwise exists.
We affirm the order of the trial court with respect to its dismissal of defendants' motion to stay the action and refer to arbitration. As explained above, we dismiss the remainder of defendants' arguments, leaving the trial court's order undisturbed.
Affirmed.
Judge BRYANT concurs.
Judge STEELMAN concurs in part and dissents in part per separate opinion.
STEELMAN, Judge, concurring in part and dissenting in part.
I fully concur in the portions of the opinion dismissing defendant's first three arguments as being from a non-appealable, interlocutory order. I must respectfully dissent from the portion of the opinion affirming the trial court's denial of defendant's motion to compel arbitration.
An order denying a motion to compel arbitration affects a substantial right and is immediately appealable. Howard v. Oakwood Homes Corp., 134 N.C.App. 116, 118, 516 S.E.2d 879, 881, disc. review denied, 350 N.C. 832, 539 S.E.2d 288 (1999), cert. denied, 528 U.S. 1155, 120 S.Ct. 1161, 145 L.Ed.2d 1072 (2000).
N.C. Gen.Stat. § 1-569.7(a) provides that the trial court shall order the parties to arbitrate, "unless it finds that there is no enforceable agreement to arbitrate." N.C. Gen.Stat. § 1-569.7(a)(2) (2007). In the instant case, the trial court's order contained no findings of fact. The only mention of the arbitration issue was the ruling: "[d]efendants' *778 Motion to Stay the Action and Refer to Arbitration, is denied."
Rule 52(a)(2) of the Rules of Civil Procedure states that findings of fact and conclusions of law are necessary in motion rulings only when requested by a party. N.C. Gen. Stat. § 1A-1, Rule 52(a)(2) (2007). Prior to the entry of the trial court's order, defendant objected to "the lack of any supportive findings or conclusions of law in the Order" in a letter dated 16 May 2008, sent to opposing counsel and the trial judge. This objection was sufficient to constitute a request for findings of fact under the provisions of Rule 52(a)(2).
The majority opinion speculates that under the framework set forth in the Revised Uniform Arbitration Act (Article 45C of Chapter 1 of the General Statutes) that "the only logical reason for that denial is that there was no enforceable agreement to arbitrate." It goes on to affirm that ruling without any explanation as to why it was correct.
If one takes the position that the trial court must have logically made the correct decision, then there is little need to have appellate courts. The purpose of allowing a party to request that the trial court make findings of fact is so that the parties can understand the trial court's ruling, and make an intelligent decision whether to appeal the ruling. Findings of fact are also of some value to the appellate court in assessing the correctness of the trial court's ruling.
I would remand this issue to the trial court for entry of an order containing findings of fact as required pursuant to Rule 52(a)(2).
NOTES
[1] Neither the pleadings nor the trial 1 court's order made any reference to either statutory scheme.