An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-931

Filed 6 May 2026

Wake County, No. 24CV023786-910

TYLER SCOTT HOGAN, Plaintiff,

v.

TERRANCE DOUGLAS THAYER, II, KRISTEN LEONARD THAYER, INTELLOMATE, LLC, 42 NORTH, LLC, ASAP SYSTEMS, INC., CAROLINAVEST, LLC, RUTH HOLDINGS, LLC, SUR VENTURES, LLC, T 42 SQUARED LLC, TAB RALEIGH, LLC, AMZ PROS, LLC, THAYER INVESTMENTS, INC., THAYER VENTURES, INC., TKT HOLDINGS, LLC, THE THAYER CO, LLC, and ROW 12, LLC, Defendants.

Appeal by defendants from order entered 4 June 2025 by Judge Warren McSweeney in Wake County Superior Court. Heard in the Court of Appeals 21 April 2026.

>*Harris Legal, PLLC, by Zachary M. Harris, for plaintiff-appellee.*
>
>*Phelps Dunbar LLP, by Sarah Covey Blount and Jonathan E. Hall, for defendants-appellants.*

ARROWOOD, Judge.

Terrance Douglas Thayer, II ("Mr. Thayer"); Kristen Leonard Thayer ("Ms. Thayer"); Intellomate, LLC; 42 North, LLC; ASAP Systems, Inc.; Carolina Vest, LLC;

Ruth Holdings, LLC; Sur Ventures, LLC; T 42 Squared, LLC; TAB Raleigh, LLC; AMZ Pros, LLC; Thayer Investments, Inc.; Thayer Ventures, Inc.; TKT Holdings, LLC; The Thayer Co., LLC; and Row 12, LLC (collectively the "defendants") appeal from an order denying their Motion to Stay Pending Arbitration. Defendants contend there is a valid and binding agreement to arbitrate which must be enforced, and further argue they did not waive their right to arbitration. For the following reasons, we affirm the trial court's order.

## I.     Background

On 29 July 2024, plaintiff filed his initial Complaint in this matter. Plaintiff asserts claims of fraud, civil conspiracy, unfair and deceptive trade practices, unjust enrichment, fraudulent transfer, negligent misrepresentation, breach of fiduciary duty, and breach of contract, with an additional claim for veil piercing because the corporate defendants were the Thayers' instrumentalities.

The Complaint's factual allegations are as follows. The course of conduct alleged began when Mr. and Ms. Thayer formed the online commerce venture Intellomate, which the Complaint describes as a "drop-shipping"[1] company. In March 2022, plaintiff saw a social media post by Intellomate advertising its passive

---

[1] In this practice, Merchant A identifies a product for sale by Merchant B and advertises the product himself at a higher price. When Customer orders the product from Merchant A, Merchant A buys the product from Merchant B but requests shipment to Customer's address. At the time of purchase, if the sale is no longer profitable for Merchant A or the item is no longer available from Merchant B, Merchant A cancels the sale and refunds Customer. Drop-shipping merchants frequently open online vendors through Amazon, which forbids the practice and accordingly terminates such vendors.

investment opportunity and "model of success" and subsequently paid $500.00 to meet with Mr. Thayer. Mr. Thayer "promised they could generate incredible returns" for him and offered a refund if he "hadn't made his money back in 18 months[.]" Mr. Thayer did not inform plaintiff: that the drop-shipping procedure violated Amazon policy, that several clients' stores had already been terminated as a result, and that the procedure depended on the deception of both Amazon and its buyers. Mr. Thayer routinely told investors that he developed an automated system but instead relied on remote overseas workers.

The alleged "material misrepresentations and concealments" induced plaintiff to pay Mr. Thayer $35,000.00 and a monthly management fee, entering an "illusory contract" with Intellomate. Defendants also received a 35% share of any profits investors earned on drop-shipped purchases.

On 20 May 2022, an employee of Mr. and Ms. Thayer "accidentally included all of [their] clients" on an e-mail, which raised suspicions among its recipients. In a subsequent Zoom meeting, these investors confronted Mr. and Ms. Thayer about disappointing returns, and the Thayers refused to issue refunds to those who "wanted out of the investment." In July 2022, plaintiff requested itemized receipts to substantiate charges to his credit card, but Mr. Thayer refused and offered to let him out of the contract but without a refund. Plaintiff discovered that the Thayers often refunded plaintiff's customers even after delivery of their orders and issued them false tracking numbers. After plaintiff demanded a meeting with Mr. Thayer, his

access to the seller account was revoked, and on 19 August 2022, Mr. Thayer told the investors "they were going to suspend all of their stores indefinitely" and refused to issue refunds or otherwise honor any guarantees. This foreclosed any possibility of a return on plaintiff's investment.

Plaintiff says Intellomate managed 200 stores through initial investments of "at least $35,000.00 each" over 18 months, thereby netting over $7,000,000.00. Plaintiff alleges that Intellomate, LLC, 42 North LLC, LLC, ASAP Systems, Inc., Carolina Vest, LLC, The Thayer Co., LLC, Ruth Holdings, LLC, Sur Ventures, LLC, T 42 Squared, LLC, AMZ Pros, LLC, TAB Raleigh, LLC, Thayer Investments, Inc., Thayer Ventures, Inc. and TKT Holdings, LLC (the "Corporate Defendants") are "primarily sham companies," most of which share the same office address and phone numbers, and for which Mr. and/or Ms. Thayer are listed as managers or corporate representatives. Plaintiff alleges that his contract with defendants was void *ab initio* because it was procured by fraud.

On 31 July 2024, all defendants received service of the above Complaint, except Mr. and Ms. Thayer; TAB Raleigh, LLC; and AMZ Pros, LLC. Ms. Thayer was served on 6 August 2024, and Mr. Thayer was served on 12 August 2024. Plaintiff's Amended Complaint added a claim for punitive damages and a new defendant, Row 12, LLC, and was served on 28 August 2024. Defendants served an Answer to the Amended Complaint on 18 October 2024. TAB Raleigh, LLC and AMZ Pros, LLC were served on 23 October 2024.

On 17 March 2025, plaintiff filed a Motion for Sanctions pursuant to Rule 37 as to all defendants, and the trial court heard the Motion on 1 April 2025. The court found that, following a previous Order allowing plaintiff's Motion to Compel, defendants' production was not "full and complete" and "this failure was not justified." The court ordered Mr. and Ms. Thayer to provide "full and complete responses" by 5:00 p.m. on 4 April 2025, and if they were not "full and complete" the Amended Complaint's allegations would be "established as admitted" and all defendants would be "precluded from contesting them."

Following the 1 April 2025 hearing, plaintiff's attorney Zachary M. Harris ("Mr. Harris") contacted defendants' attorney Sarah Covey Blount ("Ms. Blount") with an attached proposed order. By e-mail, Ms. Blount asked for a "short extension until next week to appropriately respond before submitting this form of the Order" because she was "forced to deal with a very serious personal matter." Mr. Harris waited to submit the proposed order.

However, although they were apprised of the court's deadline, the record does not reflect that the individual defendants complied with the Order Granting Sanctions by making any submissions. Instead, on 4 April 2025, three days after her e-mail response, Ms. Blount initiated commercial demand for arbitration against plaintiff on behalf of Intellomate. On 14 April 2025, defendants filed a Motion to Stay Pending Arbitration pursuant to N.C.G.S. § 1-569.5.

The trial court heard defendants' Motion to Stay Pending Arbitration on

19 May 2025. It entered its written Order denying this Motion on 5 June 2025. The Order established the following factual findings and legal conclusions. First, it found that the court had already denied defendants' Motion for Reconsideration of the Order Granting Sanctions, and that the allegations of the Amended Complaint were therefore "judicially established" and "incorporated into this Order as findings of fact." Next, the court found that the parties' contract containing an arbitration provision was "void *ab initio*" because it was procured by fraud and that therefore no arbitration agreement between the parties exists. Also, it found that defendants "have waived any right to arbitration they may have had by their delay and by taking actions inconsistent with an intent to arbitrate" because they made discovery filings, filed an Answer, corresponded with plaintiff's counsel, calendared motions, and selected a mediator without ever "raising arbitration as an issue" and "only raised arbitration and sought this stay after they were sanctioned." Last, the court found that plaintiff was prejudiced by the failure to raise arbitration earlier, due to the significant resources expended in litigation as to the Discovery Order, Sanctions Order, and defendants' Motion for Reconsideration absent any pursuit of arbitration.

On 19 May 2025, defendants gave Notice of Appeal as to the Order Denying the Motion to Stay Pending Arbitration.

## II.    Discussion

The order on appeal is interlocutory, as it does not dispose of the entire pending case. *See Veazey v. Durham*, 231 N.C. 357, 362 (1950). Although such orders are

- 6 -

generally not appealable, grounds for appellate review exist where the order "affects a substantial right." N.C.G.S. § 1-277(a); N.C.G.S. § 7A-27(b)(1), (3)(a). An order denying a motion to stay pending arbitration, while interlocutory, is immediately appealable because it affects a substantial right. *Gemini Drilling & Found., LLC v. Nat'l Fire Ins. Co.*, 192 N.C. App. 376, 381 (2008). Therefore, grounds exist obliging us to review the order.

Defendants offer three contentions to support their argument that we must reverse the trial court's denial of their Motion to Stay Pending Arbitration and remand to the trial court for entry of an order granting it. First, they contend that the order should be vacated and rendered void and the allegations therein should not be established as admitted. Second, they contend that the parties have a valid and binding agreement to arbitrate which must be enforced under the Federal Arbitration Act. Third, they contend that defendants never waived their right to arbitration.

### A. Standard of Review

Whether a particular dispute is subject to arbitration is a question of law asking "whether the parties had a valid agreement to arbitrate" and whether "the specific dispute falls within the substantive scope of the agreement." *Raspet v. Buck*, 147 N.C. App. 133, 136 (2001) (citation and internal quotation marks omitted). The trial court's factual findings are "conclusive on appeal if supported by competent evidence, even if" contrary evidence exists; legal conclusions drawn therefrom are reviewable *de novo. Tillman v. Com. Credit Loans, Inc.*, 362 N.C. 93, 100–101 (2008)

(citations and quotes omitted).

B.     The Trial Court Properly Found That No Valid or Enforceable Arbitration Provision Exists

The trial court and the parties agree that the Federal Arbitration Act ("FAA") governs the subject matter of this dispute and that North Carolina's Uniform Arbitration Act applies to questions that legislation does not address. "[W]e are bound by the decisions of the United States Supreme Court construing federal laws, such as the FAA." *Torrence v. Nationwide Budget Fin.*, 232 N.C. App. 306, 321 (2014) (citation omitted). The Supreme Court instructs that "federal policy is about treating arbitration contracts like all others, not about fostering arbitration[,]" and "a court may not devise novel rules to favor arbitration over litigation." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (citation omitted).

The FAA provides for enforcement of arbitration agreements except where superseding "grounds exist at law or in equity[.]" 9 U.S.C. § 2. "State law generally governs issues concerning the validity, revocability, or enforcement" of arbitration agreements, including generally applicable contract defenses such as fraud, duress, or unconscionability without contravening the FAA. *See Ragan v. Wheat First Sec., Inc.* 138 N.C. App. 453, 546 (2000); *see also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

Even if a contract is valid and contains a valid arbitration clause, a party may waive the right to invoke this agreement by taking actions inconsistent with such

right. *Herbert v. Marcaccio*, 213 N.C. App. 563, 567 (2011). Whether a party has waived a right to arbitration is a question of fact. *Id.* A party impliedly waives arbitration when, by delay or conduct inconsistent with arbitration, the opposing party is prejudiced. *Id.*

The record before us supports the Order's factual finding that defendants acted inconsistently with the intent to arbitrate. Defendants waited over six months from the date of service and never raised arbitration before the Sanctions Order. In the meantime, they filed an Answer and Motion to Dismiss, served discovery and interrogatory responses so useless as to prolong litigation, and then calendared plaintiff's Motion to Compel. By the time defendants filed their Motion to Stay Pending Arbitration, plaintiff was prejudiced, having pursued motions that likely would have been unnecessary had defendants shown an intent to arbitrate at the proper time. These findings as to prejudice and waiver are conclusive on appeal.

The court wrote that "there is no enforceable arbitration agreement between the parties and, if there were, the Defendants have waived any right to arbitration they might have had" and therefore denied defendants' Motion to Stay Pending Arbitration. Because the findings support this legal conclusion, we affirm the court's Order.

## III.   Conclusion

For the above reasons, we affirm the trial court's order denying the Motion to Stay Pending Arbitration.

AFFIRMED.

Judges HAMPSON and FLOOD concur.

Report per Rule 30(e).